ISAAC McLEAN SONS CO. v. WILLIAM S. BUTLER & CO., Inc.

In re GILCHRIST CO.

(District Court, D. Massachusetts. October 6, 1913.)

No. 396 Equity.

RECEIVERS (§ 152*)—LIABILITY OF FUNDS IN HANDS OF RECEIVER—ESTABLISHMENT OF TRUST.

Intervening petitioners entered into contracts with defendant company, for which receivers were afterward appointed, by which goods of petitioners, severally, were to be placed in defendant's store for sale. The management and control of the goods until sold, of the persons employed to sell them, and of the making of the sales, remained wholly with petitioners; but the contracts provided that "all sales and cash are to be handled in the same way that all other sales and cash are handled in the company's store," and that defendant should account and pay over monthly to each petitioner the receipts from sales after making certain deductions. The proceeds received from sales were mingled by defendant with its own funds, and at the time of the receivership certain of such pro-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ceeds had not been accounted for, but were traceable into specific funds of defendant which passed into the hands of the receivers. *Held,* that there was nothing in the contracts which established a trust relation between the parties with respect to the money received or which gave petitioners any greater rights in the funds in which it was included than other contract creditors.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 272–275, 278; Dec. Dig. § 152.*]

In Equity. Suit by Isaac McLean Sons Company against William S. Butler & Company, Incorporated. In the matter of Gilchrist Company. On intervening petitions of Chauncy G. Shaw and Enoch E. Fletcher. Petitions dismissed.

Frederick H. Nash, of Boston, Mass., for receiver.
Lee M. Friedman, of Boston, Mass., for Chauncy G. Shaw.
Eldredge & Peirce, of Boston, Mass., for Enoch E. Fletcher.

DODGE, Circuit Judge. Each petitioner had a contract with the Gilchrist Company. Shaw's was in writing, dated July 2, 1912. Fletcher's was oral, but its terms are evidenced, as is agreed, by an unsigned draft produced in evidence. It also dates from July 2, 1912. Under these contracts the parties had acted for several weeks preceding November 7. 1912, the date upon which receivers were appointed in the above-entitled case of the Gilchrist Company and its assets.

On November 7, 1912, the Gilchrist Company stood charged on its own books for amounts due the petitioners on account of sales made in its store of the petitioners' property in accordance with the above agreements; the proceeds of said sales having been received by the company as in the agreements provided.

The petitioners ask for an accounting of the proceeds so received and for an order that the receivers turn over to them respectively the moneys found due them. Each petitioner claims that the company was holding the money due him as above on November 7, 1912, in a fiduciary capacity, and that he stands with regard to it, not in the position of an ordinary creditor, but entitled in equity to follow and recover the amount due him, out of the funds held by the receivers. In both cases the company intermingled the moneys received from the above sales with its own funds; but, if their contracts were such as to give the petitioners a specific interest in and an equitable charge upon those moneys, I see nothing to prevent them from tracing or identifying them sufficiently for the purpose of the recovery they seek. The moneys do not seem to me to have been so dealt with since their receipt as to make impossible a distinction between what the company received in exchange for the petitioners' goods and its funds derived from other sources. The facts agreed identify specific funds as including specific amounts derived from sales under the agreements and show each such specific fund to have been at all times of greater amount than the amount of such proceeds now included in it.

The agreements called for monthly settlements and provided for deduction by the company of expenditures which it authorized the

company to make on the petitioners' account, also for deduction in addition of 15 per cent. upon the gross proceeds of sales, for the company itself. The company agreed to pay the balances so ascertained to the petitioners respectively. Under the Shaw agreement everything had been thus settled up to October 21, 1912, and only proceeds received after that date and before November 7th are in question. Under the Fletcher agreement all accounts had been settled up to October 1st.

The company's liability to the petitioners thus rests upon its express agreement to pay them monthly the balance of a monthly accounting to be made upon agreed terms. It can be regarded as liable to them otherwise than to any other contract creditor for an ascertained amount, only in case sufficient indication can be found, in the terms of the agreements, that the parties so intended.

The agreements contemplate no management or control by the company of anything beyond the proceeds of the sales, either in cash or credits, after the petitioners themselves had completed the sales. The entire management and control of the goods until they had been sold, of the persons employed to sell them, and of the making of the sales, remained wholly with the petitioners. The goods were not in the company's hands to be sold and accounted for. No liability in connection with them was assumed by the company until the petitioners, through their own employés, had put the proceeds of sales into the company's hands. There was no undertaking to account for and pay over "net profits as such," as in Pratt v. Tuttle, 136 Mass. 233.

The company's duty with regard to the proceeds so received was only that of accounting for them at the agreed times and on the agreed terms. It undertook nothing in regard to the safe-keeping of what it received, except what can be implied from the agreement to account, or from the express provision in both agreements that "all sales and cash are to be handled in the same way that all other sales and cash are handled in the company's store." It was therefore not only free to mingle these proceeds with its own funds instead of keeping them in a separate fund, but that it should so mingle them was expressly stipulated. The proceeds were to remain part of its own funds, subject only to the obligation of accounting for them at the agreed times. I do not see how it can be said to have assumed any duty of custody or management regarding these proceeds, differing from that which it owed to all its creditors as to its own funds in general. Nothing in the nature of investment for the petitioners' benefit can fairly be said to have been contemplated.

Each petitioner, it is true, made the company his agent to refund from the proceeds in its hands what it thought right to dissatisfied customers; but each agreed in advance to be bound by the company's exercise of discretion in such cases, and a refund could have raised no question except as to the amount in fact allowed.

In the agreement with Shaw is contained a provision not found in that with Fletcher, viz.:

"Charges to customers * * * must be authorized and assumed by said company, and settlements of such charge accounts must be made with said Shaw in the regular monthly cash settlement."

If any such charges to customers were in fact assumed by the company, they clearly belonged thereafter to the company, and the company owed Shaw their amount at the next accounting. If such credits were to become the company's property, it would seem that no different result could have followed as to the cash credited to this petitioner in the same account.

I am, on the whole, unable to find any implied trust established by the terms of the agreements, and must therefore rule that the petitions cannot be maintained.

Both petitions are dismissed.