## In re STEELE-SMITH DRY GOODS CO.

(District Court, N. D. Alabama, S. D.   May 23, 1924.)

### No. 20731.

1. **Words and phrases—"Fiduciary debt" defined.**

   A "fiduciary debt" is a debt founded on or arising from some confidence or trust, as distinguished from a debt founded simply on contract.

   [Ed. Note.—For other definitions, see Words and Phrases, Fiduciary Debt.]

2. **Bankruptcy ⬅140(3)—Relation between department store and lessees of departments held not simply debtor and creditor.**

   Where department store leased out departments to others, and took certain percentage of gross receipts as rental, and furnished cashiers, who handled all money and paid to lessees money due them weekly, the store was trustee for lessees, and on its bankruptcy lessees could trace funds.

3. **Bankruptcy ⬅154—Bank held not entitled to right of set-off of trust funds.**

   Where store leased out departments, furnished cashiers, took in all money, kept percentage, and paid balance to lessees, on bankruptcy of store, bank in which funds were deposited by store was not entitled to set off deposit against indebtedness due by store to extent that deposit represented moneys belonging in equity to lessees; it appearing that bank did not change its position by reason of deposit.

In Bankruptcy.   In the matter of the estate of the Steele-Smith Dry Goods Company, bankrupt.   Petitions by the Steele-Smith Cloak Department, Inc., and others, seeking to establish trust in moneys received by receiver.   Decree of referee affirmed in part, and reversed and rendered in part.

Leader & Ullman, of Birmingham, Ala., for Steele-Smith Cloak Department, Inc.

Ritter, Wynn & Carmichael, of Birmingham, Ala., for Emporium World Millinery Co.

Coleman, Coleman, Spain & Stewart, of Birmingham, Ala., for Steele-Smith Bootery, Inc.

Tillman, Bradley & Baldwin, of Birmingham, Ala., for Birmingham Trust & Savings Co.

R. Dupont Thompson, of Birmingham, Ala., for Trustee.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

GRUBB, District Judge.   *Statement of the facts necessary to an understanding of the decree is briefly set out as follows:*

Steele-Smith Dry Goods Company was engaged in business in Birmingham, Ala., operating a department store.   Some time prior to bankruptcy, it made contracts, which are so far as necessary for the purposes of this case similar, with the Steele-Smith Cloak Department, Inc., the Emporium World Millinery Company, and Steele-Smith Bootery, Inc., respectively.   Under these contracts, the above-mentioned petitioners were granted the right to engage in and carry on business in the department store of the above-named bankrupt; one of the petitioners conducting the ready to wear department, another a millinery department, another a shoe department.   The petitioners furnished their own merchandise and sales people and from time to time daily, the proceeds of the sales made by them were taken charge of by the cashier of the bankrupt under agreement to account to the petitioners for the net proceeds of the sales at the end of each week, or two weeks.   The bankrupt had the right to deduct from the gross proceeds of such sales a percentage amounting to 10 per cent.   In one case, and 13 per cent, in another, and 12 per cent. in another; also to deduct a proportionate part of the advertising and all cash expended by the bankrupt for the benefit and upon the order of the petitioners for salaries, express charges, freight, and other expenses.   The bankrupt undertook to furnish the selling space, window space, light, heat, water, cashier service, bookkeeping service, boxes, paper, wrapping, and delivery.   All advertising was incorporated in the general advertising scheme of the bankrupt, but to be paid for by the petitioners at pro rata rates.

The testimony discloses that each day the bankrupt furnished a cashier in the several departments, who received the proceeds of each sale as made, and at the end of the day the total sales in each department were turned over to the head cashier of the bankrupt, and by such cashier the funds from all of the departments, leased as well as those operated by the bankrupt itself, were commingled and placed in a safe in the bankrupt's store, and on the following morning turned over to the office manager, who made the proper entries in the books and deposited the entire proceeds of the day's sales in the general checking account of the bankrupt in the Birmingham Trust & Savings Company.   The bankrupt drew checks upon said account indiscriminately to pay its own obligations, as well as to pay to the petitioners from time to time the net amounts found to be due to petitioners under the contract.

The bankrupt was largely indebted to said bank for borrowed money, which indebtedness had existed for some months prior to bankruptcy; the last loan having been made by the bank in August, 1923.   All payments due to the petitioners by the bankrupt were made in due course up to January 1, 1924.   A petition in bankruptcy was filed against the Steele-Smith Dry Goods Company on January 19, 1924, and a receiver appointed on the same day, who immediately took charge of the store.   At the time the petition in bankruptcy was filed, the bankrupt had on deposit to its credit in the Birmingham Trust & Savings Company $2,800.   The receiver, on taking charge, found approximately $1,000 in the safe in the storehouse of the bankrupt, of which he took

possession. The Birmingham Trust & Savings Company applied the $2,800 on hand at the time of bankruptcy as a set-off or credit upon the antecedent debt of the bankrupt to itself.

The receiver in due time was elected and appointed as trustee of the bankrupt estate, whereupon the Steele-Smith Cloak Department, Emporium World Millinery Company, and Steele-Smith Bootery, severally, filed petitions before the referee, setting up the above facts and seeking to establish a trust in the moneys seized by the receiver and in the $2,800 remaining to the credit of the bankrupt on the day of bankruptcy in the Birmingham Trust & Savings Company. The trustee, John S. Coxe, and the Birmingham Trust & Savings Company were made parties to these petitions. Rules nisi were issued by the referee to the bank and trustee, requiring them to show cause why the prayer of these petitions should not be granted. The trustee appeared and filed an answer, and the bank likewise appeared, waiving the question of jurisdiction in a summary proceeding, and filed an answer to the merits, after filing a motion to dismiss the petition, which was overruled.

The testimony, without conflict, shows that the money seized by the receiver and which came into the hands of the trustee, which moneys were found in the safe of the bankrupt on the morning of January 19, 1924, were the proceeds of the sales made in the bankrupt's store and in the several leased departments on the 18th of January, which had not been deposited in bank, and the testimony, without conflict, shows specifically the amount of the sales of each of said departments. The total net amount of the proceeds of the sales of the three petitioners for the period beginning January 1 and ending with the close of business on January 17, and remaining unpaid at the time of bankruptcy, amounted to approximately $5,200. The testimony discloses further that all of the proceeds of the sales during the period beginning January 1 down to the date of the bankruptcy, except January 18, were deposited in bank to the general credit of the bankrupt, and that the account fluctuated from day to day, as deposits were made and checks were paid.

Several days prior to bankruptcy, the fund in the hands of bank had been partially depleted, so that only $1,247 remained in the fund, and this was the lowest amount to which the fund was depleted during the period beginning January 1. Following this, the proceeds of sales made in the departments operated by the petitioners were traced into the fund, with the effect of building it up again to the amount of $2,051.40. The referee held that petitioners were not entitled to relief against the bank. He also held that the petitioners were entitled to relief against the trustee to the extent of the proceeds of their sales of January 18, and decreed accordingly; the testimony furnishing the data upon which the amount was fixed. From this decree reviews were taken by all the parties except the bank.

The trustee and the bank contend that the relationship existing between the bankrupt and the petitioners was simply that of debtor and creditor, while the petitioners contend that the relationship existing between the parties was of a fiduciary character, and that the bankrupt, in taking charge daily of the proceeds of the sales of the merchandise

belonging to the petitioners, was acting as the bailee for petitioners, and that in equity the trustee should be required to account as a trustee for such funds. The trustee contends that the definition of fiduciary relation appearing in the Bankruptcy Law with relation to discharges applies in this proceeding, and that the obligation sought to be enforced is not within the meaning of the special trust defined in the bankruptcy. law. In Re Woods & Malone (D. C.) 121 Fed. 599, 600, the court said:

"The question here does not depend upon the priority of a debt due from a special trustee, like a guardian, executor, or administrator, to the cestui que trust. The intervention is an appeal to the equitable powers of the court to trace the values inhering in an implied trust, which results from the fact that Wood & Malone by mistake took and disposed of cotton of a shipper who was not their customer consigned to factors other than themselves. On this subject we are of the opinion that the Supreme Court of the United States has established a principle for the equitable enforcement of implied trusts of this character much more than sufficient to recover for the intervenor the proceeds of his cotton bale. The leading case is that of National Bank v. Insurance Co., 104 U. S. 68, 26 L. Ed. 693."

[1, 2] So in this case the intervention here is an appeal to the equitable powers of the court to establish the rights of the petitioners in a fund distinctly traced and arising from an implied trust. Manifestly the relationship between the parties here is not that of debtor and creditor merely. Neither was the money loaned by petitioners to the bankrupt. A fiduciary debt is a debt founded or arising from some confidence or trust, as distinguished by a debt founded simply on contract. Crisfield v. State, 55 Md. 192–194.

In the case of Milwaukee Boston Store v. Katz, 153 Wis. 492, 140 N. W. 1038, wherein the contract between the parties was in material respects similar to that here, the court said that the contract created a fiduciary relation between the parties. In Re A. D. Matthews' Sons, Inc., 238 Fed. 785, 151 C. C. A. 635, in which the complainant conducted a department in the store of the bankrupt, disposing of its goods under an agreement that the bankrupt should make collections and should account for such sums monthly and after bankruptcy the claimant asserted rights in the funds received by the trustee from the sale of claimant's goods, the court held that the claimant had the burden of clearly tracing the proceeds of the sale of those goods into some specific fund or property in the hands of the trustee.

In Re A. Bolognesi & Co., 254 Fed. 770, 166 C. C. A. 216, the rules of law with relation to tracing a trust fund are well and clearly stated and are followed in this case. In the case of Bank of Williston v. Alderman, 106 S. C. 386, 91 S. E. 296, it is held that it is not essential for the application of this doctrine that an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner, but that, whenever one person has wrongfully taken the property of another and converted it into a new form, the trust arises and follows the property or its proceeds. 3 Pomeroy, Eq. Jur. § 1051.

[3] As to the right of the bank to set off the deposit remaining in its hands on the day of bankruptcy against the indebtedness due it by the bankrupt, it is sufficient to say that such right would be unquestioned, were it not for the superior equities of the petitioners. But when it is shown that in part the fund represented by the deposit was created out

of moneys belonging in equity to the petitioners, then in that situation the bank cannot claim the right of set-off unless it is in the position of a bona fide holder of value without notice. Fulton National Bank v. Hosier (C. C. A.) 295 Fed. 611, and cases cited there; Oliver v. Piatt, 3 How. 333, 11 L. Ed. 622.

The undisputed evidence in this case shows that, while the bank may have had no knowledge of the true ownership of the money, yet it did not change its position by reason of the deposit. It results that the decree of the referee must be affirmed in part, and reversed and rendered in part. Let the following decree be enrolled:

In the above-entitled cause, the same was submitted upon the petition of the Steele-Smith Cloak Department, Inc., Emporium World Millinery Company, Inc., Steele-Smith Bootery Company, Inc., Birmingham Trust & Savings Company, and John S. Coxe, as trustee of the above-named bankrupt, to review the order entered in this cause on the 6th day of May, 1924, by Hon. George P. Bondurant, referee, and upon the submission of the same and the testimony and exhibits, and upon the argument of counsel for the respective parties, the same having been heard and understood and the parties all consenting that the said causes may be consolidated and tried jointly, the court is of the opinion that the referee erred in holding that the petitioners were not to recover of the Birmingham Trust & Savings Company.

The court is of the further opinion that the referee did not err in holding that the petitioner, Steele-Smith Cloak Department, Inc., is entitled to receive from John S. Coxe as such trustee the sum of $238.-70, and to that extent the order of the referee is affirmed, and the said John S. Coxe is hereby ordered and directed to pay to the Steele-Smith Cloak Department, Inc., or to Leader & Ullman, attorneys of record, the sum of $238.70.

The court is of the opinion, and so holds, that the referee did not err in holding that the Steele-Smith Bootery Company, Inc., was entitled to have and recover of the said John S. Coxe as trustee the sum of $140.54, and to that extent the order of the referee in that regard is affirmed, and the said John S. Coxe as such trustee is hereby ordered and directed to pay the Steele-Smith Bootery Company, Inc., or its attorneys of record, Coleman, Coleman, Spain & Stewart, the sum of $140.54.

The court is further of the opinion that the referee did not err in holding and directing that the Emporium World Millinery Company, Inc., was entitled to have and recover of the said John S. Coxe as trustee the said sum of $139.50, and to that extent the order of the referee is affirmed, and the said John S. Coxe as such trustee is hereby ordered and directed to pay to the Emporium World Millinery Company, Inc., or its attorneys of record, Ritter, Carmichael & Wynn, the said sum of $139.50.

The above and foregoing amounts are the net amounts to be paid by the said John S. Coxe as such trustee, after deducting from the gross amount the several sums taxed by the referee as costs against the said above named petitioners; and in addition to the amount hereby ordered paid by the said John S. Coxe to the said several petitioners the

said John S. Coxe as such trustee will pay the said sums taxed against said petitioners as part of the stenographic fees.

It is further ordered, adjudged, and decreed that the Steele-Smith Cloak Department, Inc., have and recover from the Birmingham Trust & Savings Company, a corporation, the further sum of $1,498.99, for which execution may issue.

It is further ordered that the Steele-Smith Bootery Company, Inc., have and recover of the Birmingham Trust & Savings Company the sum of $304.26, for which execution may issue.

It is further ordered, adjudged, and decreed that the Emporium World Millinery Company, Inc., have and recover of the Birmingham Trust & Savings Company, a corporation, the sum of $278.15, for which execution may issue.

It appearing that the entire indebtedness of the bankrupt to the Steele-Smith Cloak Department, Inc., amounts to $3,815.60, and the said Steele-Smith Cloak Department, Inc., having recovered of the said John S. Coxe as trustee the gross amount of $263.70, plus $1,-498.99 from the Birmingham Trust & Savings Company, it is ordered that the claim of the Steele-Smith Cloak Department, Inc., in the sum of $2,052.91 is a just and correct amount of the balance of the indebtedness due by said bankrupt estate, and the same is hereby allowed as an unsecured claim, upon which the trustee will pay dividends to the said Steele-Smith Cloak Department, Inc., or its attorneys of record, Leader & Ullman, in due course.

And it further appearing that the entire indebtedness of the bankrupt to the Steele-Smith Bootery Company, Inc., amounts to $773.75, and that the said Steele-Smith Bootery Company, Inc., has recovered of the said John S. Coxe the sum of $153.04 gross, and from the Birmingham Trust & Savings Company $304.26, making a total of $457.30, the court finds that $316.45 is the just and correct amount of the balance of the indebtedness due by said bankrupt estate to the said Steele-Smith Bootery Company, Inc., and the claim of the Steele-Smith Bootery Company, Inc., in the sum of $316.45, is hereby allowed as an unsecured claim against the bankrupt estate of the Steele-Smith Dry Goods Company, and the trustee is hereby ordered to pay to the said Steele-Smith Bootery Company, Inc., dividends on said unsecured claim in due course.

And it appearing that the entire indebtedness of the bankrupt estate to the Emporium World Millinery Company, Inc., is $733.50, and that the said Emporium World Millinery Company, Inc., has recovered $152 from the said John S. Coxe as trustee, and from the Birmingham Trust & Savings Company, $278.15, making a total of $430.15, which, deducted from $733.50, leaves the net amount of its claim $303.35, for which the Emporium World Millinery Company, Inc., is hereby allowed as an unsecured claim against the bankrupt estate, Steele-Smith Dry Goods Company, bankrupt, and the trustee is hereby ordered and directed to pay the usual dividends upon said unsecured claim in due course.

It is further ordered that the Birmingham Trust & Savings Company shall be and is hereby authorized to file an additional claim as an unsecured creditor against the Steele-Smith Dry Goods Company, bank-

rupt, in the amount of $2,061.40, that being the sum total of the judgments herein rendered against it, and that upon the filing of said claim, duly verified by affidavit, the same shall be allowed as an unsecured claim.

Ordered, adjudged and decreed this the 23d day of May, 1924.