### In the Matter of LORD'S, INC., Bankrupt.
### CHICAGO CUTTER–KARCHER, INC., Petitioner-Appellant,

v.

### Charles D. MALEY, Trustee, Respondent-Appellee.

### No. 15088.

United States Court of Appeals
Seventh Circuit.

Dec. 17, 1965.

Rehearing Denied March 9, 1966.
(En Banc).

Swygert, Circuit Judge, dissented.

Charles R. Sprowl, Chicago, Ill., Victor Packman, St. Louis, Mo., Walter C. Clements, Taylor, Miller, Magner, Sprowl & Hutchings, Chicago, Ill., for appellant.

Gilbert Hahn, Jr., Washington, D. C., Melvin S. Feldman, Bardyl Rifat Tirana, of Amram, Hahn & Sundlun, Washington, D. C., amici curiae.

Norman H. Nachman, Chicago, Ill., Gerald F. Munitz, Allan G. Sweig, Chicago, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, and KNOCH and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

Petitioner-appellant, Chicago Cutter-Karcher, Inc., hereinafter sometimes called "Cutter-Karcher," filed a reclamation petition to recover $17,300.47 claimed as trust funds. These funds resulted from the sale of Cutter-Karcher's shoes and accessories by Cutter-Karcher's employees in the department store of the bankrupt, Lord's, Inc.

The petition was denied by the Referee in Bankruptcy, whose order was affirmed by the District Court on petition for review, and this appeal followed.

On February 1, 1956, Cutter-Karcher entered into a lease with Lord's for space in Lord's store in Evanston, Illinois, where Cutter-Karcher would sell its shoes and related accessories for cash or on credit.

It was agreed that sales would be made in the name of Lord's and recorded by Lord's at its expense, and that all moneys received by Cutter-Karcher's employees would be turned over immediately to Lord's. The agreement provided, however, in Article Sixteenth of the agreement that all the moneys and accounts so received by Lord's on account of sales in Cutter-Karcher's department would be considered to be held by Lord's:

> * * * in Trust for Lessee [Cutter-Karcher], and if mingled with Lessor's [Lord's] funds, either in cash drawer or deposit in the bank, or wherever such commingling may be effected, such funds shall nevertheless and hereby are considered trust funds, and are to be so held by Lessor in trust for Lessee until Lessor has paid to Lessee the total amount of such sales and receipts in accordance with the provisions hereof. In the event title to said funds shall at any time be called into question, the parties hereto desire to clearly indicate their intention that these funds shall be and are hereby considered and regarded by the parties hereto as trust funds irrespective of whether they are commingled or not, and said funds shall be held in trust for the benefit of Lessee.

On June 16, 1964, an involuntary petition in bankruptcy was filed against Lord's. Lord's petitioned for an arrangement under Chapter XI of the Bankruptcy Act. Until September 2, 1964, Lord's operated as debtor in possession under court order. On September 2, 1964, Lord's was adjudicated a bankrupt with its consent, and Charles D. Maley, defendant-appellee in this case, was appointed Trustee in Bankruptcy.

On June 16, 1964, Lord's had in its possession $9,553.16 net proceeds of sales in the leased department during May, 1964.

The Trustee subsequently adopted Lord's answer to the reclamation petition for the $9,553.16 plus proceeds of sales after June 16, 1964. Lord's contended that it held no sums in trust.

After hearing, the Referee in Bankruptcy found that the lease agreement and the conduct of the parties showed a relationship of debtor and creditor and not the creation of a trust. He accordingly denied the reclamation petition.

Cutter-Karcher contends that the lease agreement contained an express trust obligation which Lord's (and the Trustee, in turn) was estopped to deny. In the face of the explicit wording of Article Sixteenth, quoted above, Cutter-Karcher considers that no other conclusion may be drawn despite certain terms of the agreement and actions of the parties which Lord's points to as inconsistent with an express trust, such as failure to provide for creation of a separate fund for deposit of proceeds of sales; failure to denominate the lease a "trust agreement"; and failure to use the terms "trustee" or "beneficiary."

The Trustee appellee asks why did the parties not provide for a separate bank account with the protective features commonly associated therewith; that the parties contemplated these funds would be commingled as they were over a period of years, and that merely denominating them "trust funds" was insufficient to create a trust.

Cutter-Karcher argues that the obligation assumed in the agreement by Lord's to repay by the 15th of each month the proceeds of Cutter-Karcher's sales of the previous month (less certain authorized deductions) even though such sales were made in Lord's name and recorded at Lord's expense, with Lord's guarantee of credit or charge sales, did not operate to create a mere debtor-creditor relationship, nor to destroy the trust character of the sales proceeds in Lord's hands. Cutter-Karcher asserts that in none of the cases on which the Referee and the District Court rely were there any agreements with an express provision for a trust. That is correct.

In In Matter of Yeager Company (Mendel et al. v. Whitmer), 6 Cir., 1963, 315 F.2d 864, the facts were very much like those here except that there was no reference to a "trust" in the lease. The

court refused to infer one. Reclamation of the fund resulting from sales of Mendel and Marshall merchandise commingled with Yeager funds was denied. Another generally similar factual set-up existed in In re Martin's, District Court, New York, 1935, 11 F.Supp. 99, and in Isaac McLean Sons Co. v. William S. Butler & Co., District Court, Mass., 1913, 208 F. 730, except that there is no mention of an express trust in the quoted or described terms of the lease. In both cases, the court declined to find an implied trust.

Thus in this case we have before us a set of circumstances similar to those in which courts have refused to imply a trust.

Cutter-Karcher cites In re Steele-Smith Dry Goods Co., District Court, N.D.Ala.S.D., 1924, 298 F. 812, where under similar circumstances, the court did imply a trust and found a fiduciary rather than a debtor-creditor relationship as to funds traceable from sales in the leased department to the general bank account of the bankrupt lessor department store.

We have carefully weighed this case against the conflicting decisions and find the reasoning in the cases cited above to be more convincing.

If a trust cannot be implied, is the situation materially changed by the mere use of the term "trust" in one article of a long agreement in which the parties are designated "Lessor" and "Lessee?"

There is nothing magical in the word "trust" standing alone. As Bogert puts it in Trusts and Trustees, 2nd Ed. 1965, Vol. I, Ch. 3, § 45, p. 316:

> [T]he use of words of trusteeship is not conclusive as to the expression of an intent to have a trust, where incidents foreign to that relationship appear to have been contemplated.

Another equally respectable authority, Scott on Trusts, 2nd Ed. 1956, Vol. I, § 24, p. 181, states:

> [T]he mere fact that these words are used does not necessarily indicate an intention to create a trust.

The question in each case is whether the settlor manifested an intention to create the kind of relationship which to lawyers is known as a trust, whether the settlor manifested an intention to impose upon himself or upon a transferee of the property equitable duties to deal with the property for the benefit of another person.

All sales here were made in the Lessor's name, all proceeds of such sales were immediately turned over to the Lessor with the understanding that they could be commingled with the Lessor's own funds. Not on demand, but on agreed dates, the Lessor paid a net amount (less certain agreed disbursements, returns, etc.) out of the Lessor's own general funds.

From the time of its receipt until settlement date (at least 15 days) the Lessor had unrestricted use of the funds. A similar relationship in In re Martin's, supra, was held to be consistent with that of debtor and creditor and not that of fiduciary and beneficiary.

William Hahn and Company, *amicus curiae*, does not rely on the theory of an express trust. It argues that Lord's accepted a bailment of money which was not converted into a loan by the inability of the bailee to return the identical currency deposited, in the absence of some subsequent agreement for such a loan.

The *amicus curiae* contends that lease-departments in department stores represent a growing contemporary trend; that the decision of the Referee and the District Court would impose a high and commercially unwarranted administrative and bookkeeping expense on lessor and lessee. As *amicus curiae* sees the situation here, Lord's sole function was to account for the funds and to restore them to Cutter-Karcher on the 15th day of each month. The cases cited in support of this argument seem to deal mainly with the question of whether a particular transaction was a bailment or a sale, which is not the question before us.

A number of bailment-sale cases were also cited by Cutter-Karcher. One of

these, In re Warner-Quinlan Co., 2 Cir., 1936, 86 F.2d 103, includes the following statement (at p. 104):

> If the proceeds were to be held in trust, the deposit of such trust funds in the appellee's general account would have been a breach of trust and, if appellant knew that this was appellee's practice, it would tend to show the real understanding between the parties. \* \* \* This would contradict the provision that title to the proceeds of sale vested in the appellant; or, at best, this provision would have to be interpreted as an effort by appellant to obtain security for appellee's obligation, not as the creation of a trust relationship.

The brief of the *amicus curiae* refers to avoidance of administrative and bookkeeping expense by allowing commingling of funds. In another place, in the affidavit in support of the brief, Mr. Gilbert Hahn speaks of the bargaining process between a department store and a prospective leased department operator. He says that a financially strong department store, where risk of financial failure is small, may resist a "trust" clause because of its administrative and bookkeeping burdens, but that a financially weaker store may accept it as a suitable means of minimizing the lessee's risks in the event of the lessor's bankruptcy. Mr. Hahn feels it is unfair to deprive the lessee in such cases of the protection for which he has contracted.

Nevertheless, it appears that in the case before us, a "trust" clause has been inserted into a document which otherwise sets up a simple debtor-creditor relationship in an effort to assure the debtor's performance of its obligation and not to create a trust.

The parties to a department store-leased department agreement may establish a fiduciary relationship as they did in U. S. National Bank v. Blauner's Affiliated Stores, Inc., 3 Cir., 1935, 75 F.2d 826, where the contract provided for the funds collected to be kept in a separate account for the lessee. The parties have not done that here.

We have considered all other points and authorities to which Cutter-Karcher and the *amicus curiae* have invited our attention, but we find them lacking in merit.

The orders of the Referee and the District Court are affirmed.

Affirmed.

SWYGERT, Circuit Judge (dissenting).

If I understand the majority opinion correctly, this court is holding that if the circumstances do not permit a trust to be implied, those same circumstances will not create a trust even though the parties have additionally agreed to the creation of an express trust. To my mind this is an illogical proposition.

Here, we are asked to enforce an express trust. There is no need to imply one. Paragraph sixteen of the agreement explicitly and unambiguously shows an intent to establish a trust relationship. Even though the trust is mentioned in only one of several paragraphs of the agreement, the terms contained in the other paragraphs are consistent with the explicit provision that amounts received by Lord's on account of sales in the department leased to Cutter-Karcher should be held in trust for Cutter-Karcher. Other portions of the agreement provide, *inter alia,* that sales in the department were to be made by Cutter-Karcher's employees; that the merchandise was to be purchased by Cutter-Karcher on its credit and that it retained the right to remove its stock and any of its other chattels in the event Lord's breached the agreement. Further, all of the incidental supplies used in the department were to be furnished by Cutter-Karcher. Casualty insurance on all merchandise, workmen's compensation insurance, public liability insurance, and any taxes and licenses were to be paid by Cutter-Karcher. Thus, the entire operation of the leased department was under the control and at the expense of Cutter-Karcher. All sales receipts, however, were to be

turned over to Lord's which was obligated to keep a true and accurate account thereof. Lord's paid Cutter-Karcher's employees from these moneys, but only after Cutter-Karcher's submission of its payroll.

This method of operation enabled Lord's to simplify its bookkeeping system and to retain the twelve per cent of Cutter-Karcher's net sales agreed upon as the cost of leasing the department store space. The balance of Cutter-Karcher's receipts held by Lord's was to be remitted periodically to Cutter-Karcher.

In re Kline, 7 F.Supp. 850 (W.D.Pa. 1934), aff'd sub nom., United States Nat'l Bank v. Blauner's Affiliated Stores, 75 F.2d 826 (3rd Cir. 1935), concerned the collection of funds by the receiver and the trustee in bankruptcy during their operation of the bankrupt's business. Although it is not entirely clear, it appears that the funds may have been deposited in a physically separate account. The district court stated that by the agreements under which the claimants occupied space in Kline's department store, Kline was merely the trustee in the collection of the moneys due from credit sales by the leased departments. "The agreements so plainly state, and provide for a separate account of these items of money collected."

The majority here, referring to In re Kline, says: "The parties to a department store-leased department agreement may establish a fiduciary relationship * * * where the contract provide[s] for the funds collected to be kept in a separate account for the lessee. The parties have not done that here." True, the agreement did not require Lord's to maintain a separate bank account for funds belonging to Cutter-Karcher. But if the majority places its reliance upon the absence of a provision for the physical separation of the trust funds, such reliance is misplaced. Commingling of funds by a trustee does not of itself destroy an express trust. In re Warner-Quinlan Co., 86 F.2d 103 (2d Cir. 1936); Southern Cotton Oil Co. v. Elliotte, 218 F. 567 (6th Cir. 1914); In re Steele-Smith Dry Goods Co., 298 F. 812 (N.D. Ala.1924). Section 179, comment (f), of the Restatement of Trusts, 2nd, reads: "By the terms of the trust the trustee may be permitted to mingle trust property with his own property. It may be expressly so provided by the terms of the trust or the character of the trust may be such as to make this proper."

On the other hand, the majority may have attached significance to a supposed failure of the parties to provide a separate accounting procedure for the trust funds. But the Cutter-Karcher-Lord's agreement specifically provides for such procedure. Paragraph ten reads in part: "The Lessor agrees to keep a true and correct account of all moneys received, growing out of the Lessee's sales, including an account with respect to the Lessee's credit or charge sales, also an account of all moneys disbursed on the Lessee's authorization, and exhibit said records to the Lessee or its representatives upon reasonable request to do so."

I would reverse the order of the district court.