### In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.

### In re Reclamation petition of EX–CELL–O CORPORATION.

#### No. 70–347.

United States District Court, E. D. Pennsylvania.

Nov. 28, 1972.

Goncer Krestal, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for trustees, PCTC.

Richardson Blair, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Girard Trust Bank.

William Dimeling, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Ex-Cell-O Corp.

Nochem S. Winnet, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for First Natl. City Bank of N. Y.

### MEMORANDUM AND ORDER NO. 1030

FULLAM, District Judge.

Under a series of consignment agreements, Ex–Cell–O Corporation has for many years supplied, and continues to supply, certain "pins and bushings" to the Debtor, for use as replacement parts. The consignment agreements were apparently designed to insure an adequate and constant source of replacement parts to meet the fluctuating needs of the Debtor. Under the terms of the agreements, Ex–Cell–O was required to deliver, from time to time, enough parts to maintain an inventory, in the Debtor's possession, sufficient to meet the Debtor's requirements, but not to exceed a three-months' supply based upon the Debtor's average consumption. Except as otherwise specifically requested by the Debtor, Ex–Cell–O was permitted to suit its own convenience in making de-

liveries, so long as the appropriate inventory was maintained.

Because the agreements were continuing in nature (indefinite in duration, terminable by either party on 90-days' notice) the agreements provided that the Debtor was to pay for the pins and bushings only as they were actually withdrawn from inventory and used by the Debtor. Prices were to be determined at the rate prevailing at the time the materials were withdrawn from the inventory. The Debtor was required to prepare a monthly report, showing the amounts of materials on hand and the amounts withdrawn during the previous month; thereupon, Ex–Cell–O would bill the Debtor for the materials withdrawn, and the Debtor would pay these invoices from its general funds.

The agreements contained two provisions of particular pertinence to the present proceeding: Paragraph 14 of the agreements provided:

"14. Consignee understands and agrees that all material in consigned stock, covered by this agreement, and money due by reason of withdrawal of consigned stock and not paid for, are the property of the consignor and neither sale of business, nor bankruptcy by consignee, or receivership, shall in any way affect the consignor's ownership of the consigned stock or the monies due."

Paragraph 7 provided:

"7. Payment for material withdrawn: The consignee agrees to accept invoices based on withdrawals shown on inventory report at prices in effect at the time material was withdrawn from consigned stock."

The Debtor paid all of its monthly bills for materials withdrawn until shortly before bankruptcy, and the Trustees have paid all monthly bills for materials withdrawn since bankruptcy. However, as of the date of the filing of Debtor's reorganization petition, there were outstanding unpaid bills totaling approximately $39,121.04, for materials withdrawn during the immediately preceding two-month period. The present reclamation petition by Ex–Cell–O Corporation seeks immediate payment of that sum.

The petition prays for return of "the property or the proceeds therefrom." However, at the hearing, and in its brief, petitioner has apparently abandoned any claim for restoration of the actual pins and bushings, and seeks only to impress a "trust" on the money due. This position is quite understandable, since, under the terms of the agreements, petitioner did not purport to retain title to the materials themselves, after they were withdrawn from the inventory.

Thus, the issue presented is whether petitioner's attempt to retain title to the "money due by reason of withdrawal of consigned stock and not paid for" provides a legally sufficient basis for granting "reclamation" of the money due. I have concluded that it does not, and that the present petition must be denied.

The most essential element of a trust relationship is the existence of an identifiable *res* to which the trust can attach. That element is lacking here. While the parties have agreed that the Court may dispose of this petition on the assumption that the checking accounts of the Debtor, from which funds were periodically drawn to pay for materials used, have at all pertinent times reflected balances in excess of $39,000, I agree with the Trustees' counsel that this fact is irrelevant. If the agreements had provided for the escrowing or other segregation of the purchase price at the time materials were withdrawn from the inventory, petitioner's present claim would have merit. But no such requirement was imposed; indeed, the prices to be paid would not have been known until the petitioner submitted its monthly invoices.

It bears emphasis that the Debtor committed no breach of trust, nor did it violate the agreements, by withdrawing pins and bushings without making

**1348**

immediate payment. All that the agreements required the Debtor to do was to pay the monthly invoices when received. With respect to materials withdrawn and consumed, therefore, the relationship between the parties was purely and simply that of debtor and creditor. While the petitioner may have intended to protect itself from the effects of the Debtor's reorganization, it actually achieved such protection only with regard to the materials remaining in the inventory.