In the Matter of SHULMAN TRANS-PORT ENTERPRISES, INC., and Shulman Air Freight, Inc., Bankrupts.

PAN AMERICAN WORLD AIRWAYS, INC., Appellant,

v.

CONTINENTAL BANK, James Garrity, Trustee in Bankruptcy of Shulman Air Freight, Inc., Appellees.

No. 82 Civ. 6662 (KTD).

United States District Court, S.D. New York.

Aug. 23, 1983.

Oliner & Oliner, New York City, for appellant; Jacob Oliner, New York City, of counsel.

Morton Newman, Alan C. Gershenson, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellee; Harvey Reich, Reich, Rosen, Barrison & Felzen, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

This is an appeal from an order entered by the Honorable Joel Lewittes, Bankruptcy Judge, on August 18, 1982.[1] Appellant, Pan American World Airways, Inc. ("Pan Am"), commenced an adversary proceeding against Shulman Transport Enterprises, Inc. and Shulman Air Freight, Inc. (collectively referred to as "Shulman") and Appellee, Continental Bank. This appeal stems from the bankruptcy court's denial of Pan Am's motion for class action certification as well as its motion for summary judgment. He directed summary judgment for Continental Bank upon the undisputed facts of record. Pan Am contests the denial of both its motions. I will address the summary judgment motions first.

Shulman was·and is in the business of providing international freight forwarding services. It received freight from its customers and arranged to ship it by air carriers such as Pan Am. Shulman either consolidated small shipments and shipped them under its own name, or it arranged shipments for larger individual customers under the customers name. The debts in dispute relate to the latter type of shipments, which Shulman arranged through Pan Am.

Continental Bank has financed Shulman's operations for several years and holds a perfected security interest in all of Shulman's assets. On August 2 and 16, 1978, following the granting of Shulman's petitions for an arrangement, orders were entered authorizing Shulman to continue to borrow from Continental Bank, and providing for a security interest in favor of the bank in Shulman's assets. Such assets included its international trade receivables in dispute in this case.

Pan Am sought a determination, on behalf of itself and all other international air carriers similarly situated, that Shulman's receivables attributable to air freight services rendered by such international air carriers were the property of those carriers and therefore were not subject to Continental Bank's security interest. Pan Am argued that Shulman was merely its agent; there was no creditor-debtor relationship. Under this theory, Shulman as agent and fiduciary did not acquire title to monies it received for services performed by Pan Am and other members of its class. Consequently, the monies would not be subject to Continental Bank's security interest in Shulman's assets.

The bank, on the other hand, maintains that Pan Am was one of Shulman's creditors. Under this theory, the bank, which had a perfected security interest in Shulman's accounts receivable, would have superior rights to such receivables; Pan Am's interest in the debt was unperfected.

Thus, the only issue in dispute is how to characterize the relationship between Shulman and Pan Am, whether as principal-agent or creditor-debtor.[2] I find that the bankruptcy court properly characterized Pan Am and Shulman's relationship as that of unsecured creditor and debtor. Therefore, it properly directed summary judgment for Continental Bank because the disputed proceeds were subject to the bank's lien.

In support of its argument, Pan Am relies principally on the language of the agreement defining the relationship between the parties. Shulman had been appointed by the International Air Transport Association ("IATA"), a trade association of international airlines, to act as an intermediary between customers needing shipping services and the airlines that provided the shipping services. The appointment contract was called a "Cargo Agency Agreement." Among the provisions of the agree-

---

1. The order by Judge Lewittes was entered pursuant to an opinion by Honorable Roy Babitt, Bankruptcy Judge, on June 30, 1982, 21 B.R. 548 (Bkrtcy.1982). Judge Babitt resigned from the bench after rendering the opinion but before entering an order.

2. Pan Am does not contest that if the creditor-debtor relationship is established, as opposed to principal-agent, it would not have a security interest in the receivables because it never perfected a security interest in accordance with Article 9 of the U.C.C.

ment cited by Pan Am is the statement that "all monies collected by IATA Cargo agent, [here Shulman,] for transportation sold hereunder, are the property of the carrier," here Pan Am. Under the contract, the "cargo agent" received a five percent commission on the carrier's charge. Throughout the contract the freight forwarder such as Shulman is referred to as "agent" or "cargo agent."

■ The burden of proof is on Pan Am to establish the existence of an agency trust. *See* 4A *Collier on Bankruptcy,* ¶ 70.25 (14th ed. 1976). Talismanic language alone does not determine an agency relationship. *See Lord's Inc. v. Maley,* 356 F.2d 456, 458 (7th Cir.1965), *cert. denied,* 385 U.S. 847, 87 S.Ct. 55, 17 L.Ed.2d 78 (1965). Courts must look to the substance of the relationship. *See Standard Fashion Co. v. Magrane Houston Co.,* 258 U.S. 346, 354, 42 S.Ct. 360, 361, 66 L.Ed. 653 (1922). The existence of an agency relationship depends upon the existence of the required factual elements creating a fiduciary relation.

> The relation which the law calls agency does not depend upon the intent of the parties to create it, nor their belief that they have done so.
>
> .  .  .  .  .
>
> [O]ne may believe that he has created an agency when in fact the relation is that of seller and buyer .... The agency relation results if, but only if, there is an understanding between the parties which, as interpreted by the court, creates a fiduciary relation in which the fiduciary is subject to the directions of the one on whose account he acts. It is the element of continuous subjection to the will of the principal which distinguishes the agent from other fiduciaries and the agency agreement from other agreements.

*Comment* on subsection (1), Restatement of Agency 2d at § 1(1) (1958). Thus, the form language of the IATA agreement cannot be determinative and the substance of the parties relationship must be examined.

■ A number of undisputed facts are of particular significance in defining the Shulman and Pan Am's relationship. First, despite the statement in the IATA agreement that monies received by the "cargo agent" are the property of the carrier, the agreement does not require the segregation of such monies. In fact, all sums collected by Shulman were commingled with Shulman's own funds. A clear separation of funds creating an identifiable *res* to which a trust can attach has been deemed an essential feature of an agent's holding monies in trust. *See Lord's Inc. v. Maley, supra; In re Penn Central Transportation Co.,* 351 F.Supp. 1346, 1347 (E.D.Pa.1972). Moreover, Shulman is obligated under the agreement to pay the carrier regardless of whether or not it receives payment from the customer. In the event of default on the part of the customer, Shulman would be in the position of deciding whether to bring legal actions to collect the debt and it would have to independently finance such actions. These circumstances are not consistent with the fiduciary relationship established in agency whereby "the fiduciary is subject to the directions of the one on whose accounts he acts." *Comment* on subsection (1), Restatement of Agency 27, § 1(1). Furthermore, Shulman paid the carrier at periodic intervals which did not coincide with the times when it actually received payment from the customer-shipper. Because Shulman paid the air carrier every fifteen days, yet received payments from shippers only every thirty days, it was always paying money that certainly cannot be directly attributed to specifically collected payments.

*In re Morales Travel Agency,* 667 F.2d 1069 (1st Cir.1981) is relevant to this case. In *In re Morales,* the relationship between Morales, a travel agent, and certain airlines was governed by a similar IATA agreement which stated that whatever monies Morales collected "shall be the property of the carrier and shall be held by the Agent in trust for the carrier or on behalf of the carrier, until satisfactorily accounted for to the carrier and settlement made." *Id.* at 1070. The carrier again argued that the debtor was merely its agent. Despite the IATA

agreement language, the court found that the parties had a simple creditor-debtor relationship. Among the factors the court considered was the absence of any provision requiring Morales to separate funds and the fact that the so-called "agent" was ultimately liable to the airline for the price of tickets sold, whether or not it actually received payment from the customer. *Id.* at 1071–72. This factual situation is almost identical to the operative facts of the instant action.

Pan Am argues that *Morales* was decided incorrectly, and should be disregarded. The *Morales* proposition that the self-serving "property" language in the IATA form contract is insufficient to establish a trust or agency relationship, however, is well grounded in the decisions of other Circuits. *See Carlson, Inc. v. Commercial Discount Corp.*, 382 F.2d 903 (10th Cir.1967); *In re Lords, Inc.*, 356 F.2d 456 (7th Cir.1965). *In re Penn Central Transportation Co.*, 486 F.2d 519 (3d Cir.1973), *cert. denied*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974), on which Pan Am relies, is not inconsistent with these decisions. That case held that "while generally commingling indicates a debtor-creditor relationship and not a trust, it is only one indicium and it too is not necessarily conclusive." *Id.* at 527. In the instant case, however, commingling is not the only factor relied upon to establish the creditor-debtor relationship. Other factors of equal significance include Shulman's continued liability to the carriers whether or not it actually received payment from the customers, as well as payment schedules that required Shulman to pay monies to the airlines before it received payment from the customers. Both of these factors distinguish the case at bar from *Penn Central.* Indeed, the majority opinion in *Penn Central* took pains to distinguish *In re Chicago Express, Inc.*, 222 F.Supp. 566 (S.D.N.Y. 1963), *aff'd*, 332 F.2d 276 (2d Cir.1964), *cert. denied*, 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86 (1964), which, like the instant case, also involved these two factors in addition to commingling. *See id.* at 526–27.

This decision also is supported by the general principles of agency law cited above; the legal substance of a relationship must govern over its form. Following *Morales,* therefore, the Bankruptcy Judge properly found that the "agency" and "property" language employed in the agreement was a draftsman's device designed to insure that carriers would be paid regardless of the debtor's solvency. Such a subterfuge cannot create an agency relationship or a security interest in the debt.

The second issue is whether the bankruptcy court properly denied Pan Am's motion for class certification. I hold that it did.

The bankruptcy court determined that the class, which had between nine and forty potential members, was not so numerous that joinder of parties would be impractical. The determination of whether the requirements of Fed.R.Civ.P. 23 are met in a particular case is largely left to the discretion of the trial judge. The trial court's determination must not be reversed unless there is an abuse of discretion. *Becker v. Schenley Industries, Inc.*, 557 F.2d 346, 348 (2d Cir.1977); *Crawford v. Western Elec. Co., Inc.*, 614 F.2d 1300, 1305 (5th Cir.), *reh. den.* 620 F.2d 300 (1980), (Trial court did not abuse discretion in determining that class of thirty-four did not satisfy numerosity requirement.). Forty potential members is not necessarily such a large total that joinder would be impractical. Certainly, I cannot find that the Bankruptcy Judge's holding to that effect is an abuse of discretion. Accordingly, the bankruptcy court's order is affirmed.

SO ORDERED.