744 F.2d 293
 12 Bankr.Ct.Dec. 779, Bankr. L. Rep. P 70,138
 In re SHULMAN TRANSPORT ENTERPRISES, INC., and Shulman Air
Freight, Inc., Debtors.
PAN AMERICAN WORLD AIRWAYS, INC., on its own behalf and on
behalf of all international common carriers by air
similarly situated, Plaintiff-Appellant,
v.
SHULMAN TRANSPORT ENTERPRISES, INC., Shulman Air Freight,
Inc., and Continental Bank, Defendants.
Continental Bank, Defendant-Appellee.
 Cal. No. 1115, Docket 83-5068.
 United States Court of Appeals,
Second Circuit.
 Argued May 9, 1984.
Decided Sept. 18, 1984.
 
 Jacob Oliner, New York City (Oliner & Oliner, New York City, of counsel), for plaintiff-appellant.
 Alan C. Gershenson, Philadelphia, Pa. (Morton Newman, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., Jeffrey Herrmann, Harvey Reich, Katz, Robinson, Brog & Seymour, P.C., New York City, of counsel), for defendant-appellee.
 Before OAKES, VAN GRAAFEILAND and PIERCE, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Pan American World Airways, Inc. (Pan Am) appeals from an order of the United States District Court for the Southern District of New York (Duffy, J.), 33 B.R. 383, affirming a bankruptcy court order, 21 B.R. 548, which rejected Pan Am's claim of an interest superior to that of Continental Bank in monies collected by Shulman Transport Enterprises, Inc. and Shulman Air Freight, Inc. for air freight transportation. For the reasons that follow, we affirm.
 
 
 2
 Shulman Air Freight, Inc. is a subsidiary of Shulman Transport Enterprises, Inc. of Cherry Hill, New Jersey. On August 2, 1978, both companies (hereafter "Shulman") filed petitions for a chapter 11 bankruptcy arrangement. Shulman was an international freight forwarder, receiving freight from its customers and arranging shipment with air carriers such as Pan Am. Shulman either consolidated small shipments and forwarded them under its own name or arranged for shipment under the customer's name when consolidation proved unfeasible. In cases of unconsolidated shipments, Shulman prepared the paperwork, including air waybills, and arranged for transportation by various air carriers, all of whom were members of a trade association, International Air Transport Association (IATA). In return for its services, Shulman received a commission out of the carrier rate that it charged the shipper. The debts that are the subject of this dispute relate to the unconsolidated shipments that Shulman arranged through Pan Am.
 
 
 3
 Defendant-appellee, Continental Bank, had financed Shulman's pre-petition operations, in connection with which it was given a security interest in all of Shulman's assets. On August 2 and 16, 1978, the bankruptcy court issued orders authorizing Shulman, as debtor-in-possession, to continue to borrow from Continental and to give the bank a security interest in Shulman's assets, including the accounts receivable for unconsolidated freight forwarding services. Appropriate filings were made pursuant to the Uniform Commercial Code.
 
 
 4
 On August 23, 1978, Pan Am, on behalf of itself and other IATA members who had provided air freight services to Shulman, initiated the proceeding giving rise to this appeal. Pan Am argued that, under the agreement between IATA and Shulman, all monies received by Shulman from the sale of air cargo freight services were the carriers' property and therefore could not be included in the security interests that Shulman conveyed to Continental. The airline also moved for an order certifying the proceeding against Shulman as a class action. After issue was joined, Pan Am moved for summary judgment, claiming that no triable issue of fact was raised by the answers of the opposing parties.
 
 
 5
 The bankruptcy court denied Pan Am's motions for class certification and summary judgment, directing instead that summary judgment be granted in favor of Continental. The district court affirmed, and this appeal followed.
 
 
 6
 Pan Am contends that the IATA agreement created an agency relationship between Shulman and IATA members and that, under established law and the express terms of the agreement, all monies collected by Shulman for the transportation it sold became the property of the transporting carrier. The "Cargo Agency Agreement" under which Shulman operated did indeed describe Shulman as the agent of the IATA members. However, the district court was not bound by that terminology. Even though a person is termed an agent, he may, in fact, act as such in some matters but not in others. Patrick v. Miss New Mexico-USA Universe Pageant, 490 F.Supp. 833, 839 (W.D.Tex.1980).
 
 
 7
 Moreover, where the public interests or the rights of third parties are involved, the relationship between contracting parties must be determined by its real character rather than by the form and color that the parties have given it. Quackenbos v. Sayer, 62 N.Y. 344, 346 (1875). A usurious loan is not made lawful by falsely terming it a sale, id., or a corporate obligation, Topping v. Trade Bank of New York, 86 F.2d 116, 117-18 (2d Cir.1936). An investment in a partnership is not transformed into a loan by a disclaimer that a partnership relationship exists. Rubenstein v. Small, 273 A.D. 102, 104, 75 N.Y.S.2d 483 (1st Dept.1947). An employee does not become an independent contractor simply because a contract describes him as such. Northern v. McGraw-Edison Co., 542 F.2d 1336, 1343 n. 7 (8th Cir.1976), cert. denied, 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544 (1977). A debtor does not become the agent of his creditor simply because he is called an agent. Standard Fashion Co. v. Magrane-Houston Co., 258 U.S. 346, 354, 42 S.Ct. 360, 361, 66 L.Ed. 653 (1922).
 
 
 8
 Where the relative rights of a bankrupt's creditors are at issue, it is particularly important that substance not give way to form. Pepper v. Litton, 308 U.S. 295, 304-05, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); In re Morales Travel Agency, 667 F.2d 1069, 1072 (1st Cir.1981). The district court, therefore, correctly examined into the substance of the relationship between Shulman and the carriers to ascertain whether the money that Shulman collected was held by it in the fiduciary capacity of an agent. Furthermore, the district court did not err in holding that the money was not so held.
 
 
 9
 "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency Sec. 1(1) (1958); Nelson v. Serwold, 687 F.2d 278, 282 (9th Cir.1982). An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control. Restatement (Second) of Agency, supra, Sec. 1(1) comment b, Sec. 14. Absent the critical element of control by Pan Am over Shulman's collection and handling of funds, Shulman cannot be said to have acted as Pan Am's agent for receipt of transportation charges.[1] See Farrell Lines Inc. v. Titan Industrial Corp., 306 F.Supp. 1348, 1350 (S.D.N.Y.), aff'd on opinion below, 419 F.2d 835 (2d Cir.1969), cert. denied, 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970); In re Morales, supra, 667 F.2d at 1071.
 
 
 10
 There was no provision in the IATA agreement requiring Shulman to segregate from its general funds monies collected for the carriers' services or restricting the use of those monies. Shulman apparently was free to use the funds for its own benefit rather than that of the carriers. Although the absence of a segregation provision and even the actual commingling of funds are not conclusive indications that the relationship between Shulman and Pan Am was that of a debtor and creditor, see In re Warner-Quinlan Co., 86 F.2d 103, 104 (2d Cir.1936), the apparent lack of concern on the part of the carriers about how Shulman handled the monies it collected indicates that, in this respect at least, Shulman was not subject to the carriers' direction and control.
 
 
 11
 Similarly, Pan Am's admitted lack of knowledge and apparent unconcern about whether and on what terms Shulman extended credit to shippers indicate that Pan Am did not intend that, as to those matters, Shulman be subject to its direction and control. Ordinarily, an agent who sells goods or services on behalf of his principal cannot extend credit without the principal's authorization, nor can that agent initiate legal action to collect a debt owed its principal unless authorized to do so. See Restatement (Second) of Agency Sec. 65(1), Sec. 424 comment c, Sec. 426 comment c. The IATA agreement did not give Shulman permission to do either of these things. Yet, Shulman did extend credit and, as the district court noted, Shulman had the discretion to decide if it should institute suit to recover from shippers who defaulted.
 
 
 12
 Although the IATA agreement provided that all monies collected by Shulman for transportation sold thereunder were the property of the carrier, the contract also stated that, notwithstanding the foregoing provision, Shulman would be responsible for the payment of any monies due the carrier whether or not the money had been collected from the shipper. The purpose of the latter provision appears to have been to insure payment to Pan Am and the other carriers and to place upon Shulman the risk of collection from the shippers.
 
 
 13
 If there was no contractual duty to remit the proceeds of sale but payment monthly out of appellee's general funds was sufficient, an extension of credit would be established. This would contradict the provision that title to the proceeds of sale vested in the appellant; or, at best, this provision would have to be interpreted as an effort by appellant to obtain security for appellee's obligation, not as the creation of a trust relationship.
 
 
 14
 In re Warner-Quinlan Co., supra, 86 F.2d at 104. See also Matter of Yeager Co., 315 F.2d 864, 865 (6th Cir.1963). Credit considerations aside, it is quite obvious that, if Shulman paid Pan Am the bill of a delinquent shipper and thereafter collected the amount of the bill from the shipper, the money thus collected could not have been the property of Pan Am.
 
 
 15
 The case of In re Morales, supra, 667 F.2d 1069, involved an attempt by Eastern Airlines to recover from a bankrupt travel agency the proceeds from the sale of passenger tickets. The relationship between the airline and the agency was, as in our case, governed by an IATA agreement which provided that the proceeds of sales should be the property of the carrier and be held in trust for the carrier. The court held that no fiduciary relationship existed between the travel agency and the airlines and rejected Eastern's argument that the agency held the sales proceeds in trust. In reaching this conclusion, the court noted that the travel agency's responsibility went beyond "transmitting the funds actually received, to paying the price of tickets sold whether it received that amount or not." 667 F.2d at 1072. It further noted that the agency (like Shulman in this case) was required to transmit its sales proceeds at regular intervals, rather than upon receipt or on demand, and that the agreement did not require segregation or otherwise restrict the use of those proceeds. Id.
 
 
 16
 Although the Morales court did not address the precise principal-agent argument raised herein, it did consider whether, under circumstances remarkably similar to those before us, a fiduciary relationship was created. The court determined that it was not; other courts faced with similar situations have reached the same conclusion. See Carlson, Inc. v. Commercial Discount Corp., 382 F.2d 903 (10th Cir.1967); Matter of Lord's, Inc., 356 F.2d 456 (7th Cir.1965), cert. denied, 385 U.S. 847, 87 S.Ct. 55, 17 L.Ed.2d 78 (1966); In re Penn Central Transportation Co., 351 F.Supp. 1346 (E.D.Pa.1972). We believe these cases were correctly decided.
 
 
 17
 The judgment of the district court is affirmed.
 
 
 
 [1]
 We are not concerned in this case with issues of apparent authority or estoppel