**CARLSON, INC., Appellant,**

v.

**COMMERCIAL DISCOUNT CORPORA·
TION and Joseph R. McNeany, Trus·
tee in Bankruptcy, Appellees.**

No. 9139.

United States Court of Appeals
Tenth Circuit.

Aug. 23, 1967.

James E. Womack, Albuquerque, N. M. (Poole & Poole and Arthur G. Ortega, Albuquerque, N. M., on the brief), for appellant.

Allen C. Dewey, Albuquerque, N. M. (Modrall, Seymour, Sperling, Roehl & Harris and Daniel A. Sisk, Albuquerque, N. M., on the brief), for appellee, Commercial Discount Corporation.

Martin E. Threet, Albuquerque, N. M., for appellee, Joseph R. McNeany, Trustee in Bankruptcy.

Before MURRAH, Chief Judge, and JONES* and SETH, Circuit Judges.

* Senior Judge of the Fifth Circuit, by Designation.

SETH, Circuit Judge.

The appellant, Carlson, Inc., petitioned to reclaim approximately $37,000 from funds held by the Trustee in Bankruptcy. Appellant asserted that its claim represented moneys held by the bankrupt, Hubbard's, Inc., in trust for the appellant's benefit, and that the Trustee in Bankruptcy could not include such moneys in the assets of the bankrupt estate.

Appellant's petition was resisted by the appellees, who are the Trustee in Bankruptcy and by Commercial Discount Corporation, a secured creditor of the bankrupt.

The Referee in Bankruptcy denied appellant's petition, concluding that the relationship between appellant and the bankrupt was that of creditor and debtor. The District Court affirmed the Referee's order, and the appellant has taken this appeal.

The funds in question were derived from the following arrangement: Appellant's predecessor as lessee entered into a lease agreement with the bankrupt department store, Hubbard's, Inc., as lessor. The instrument titled "Department Store Lease" provided that appellant as lessee would operate shoe departments in each of the Hubbard's six New Mexico stores. The lease agreement further provided that the leased shoe departments would be operated under the name of the lessor-bankrupt, and that proceeds from cash sales in the leased departments would be turned over daily to the lessor-bankrupt. Charge sales in the leased departments, it was agreed, would be assumed by the lessor-bankrupt after its approval, and all credit risks including checks tendered for cash sales would also be assumed by it. The lessor-bankrupt agreed in the lease to pay to the lessee-appellant all sums due from cash and charge sales in the leased departments in the second month after the sales were made, less the agreed rental of twelve and one-half per cent of the net sales.

Among the typical lease provisions in the instrument appears the following paragraph which is the center of the disagreement:

"All moneys and accounts so received by the Lessor on account of sales in said departments, shall be considered to be held by the Lessor in trust for the Lessee and, if mingled with Lessor's funds, either in the cash drawer or deposited in the bank, or wherever such co-mingling may be effected, such funds shall nevertheless be and are considered trust funds, and are to be so held by the Lessor in trust for the Lessee until Lessor has paid to the Lessee the total amount of such sales and receipts in accordance with the provisions hereof. In the event title to said funds shall at any time be called into question, the parties hereto desire to clearly indicate their intention that these funds shall be and hereby are considered and regarded as trust funds, irrespective of whether they are co-mingled or not."

The appellant asserts that an express trust was created by the quoted paragraph, and that the proceeds of cash and charge shoe sales not paid by the lessor to it prior to bankruptcy may be reclaimed under its petition from the bankrupt estate.

The initial question on appeal is whether inclusion of such a "trust clause" in the lease agreement is sufficient to create a trust under the facts and circumstances of the case at bar to permit the reclamation of the funds.

We hold that an express trust was not so created. The agreement is essentially a lease agreement, and the provisions relative to the proceeds from sales in the shoe departments also create a debtor-creditor relationship between the parties to the lease. The instrument does not provide for the typical handling of assets or funds on a continuing basis. An express trust is defined by the Restatement (Second), Trusts § 2 (1959), as a "fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an in-

tention to create it." This is the common definition.

However the indicia of such a trust relationship are not present in the case at bar. There is no indication that the lessor assumed equitable duties to handle the "trust" funds for the benefit of the lessee, that is to deal with the property for the benefit of the appellant as the authorities define the relationship. The facts and circumstances instead indicate the creation of an obligation to repay a portion of the funds at stated times, and in the meantime the lessor could use them for its own purposes as it wished. The record shows that it did so use them. There is thus no indication that the lessee intended to impose, or that the lessor intended to assume, the fiduciary relationship of trustee and beneficiary. Instead the lessor's sole obligation under the lease agreement was to pay a sum of money to the lessee-appellant at a specified time each month. The obligation assumed by the lessor-bankrupt is nothing more than an obligation to settle an account. Each party was the debtor of the other, the lessee-appellant was indebted to the lessor-bankrupt for rental in the agreed percentage of net sales in the leased departments, and the lessor-bankrupt was indebted to the lessee for the balance of net sales and, although by no means determinative, the lessee-appellant knew that the lessor-bankrupt was commingling the proceeds from cash sales in the leased departments and had unrestricted use of such moneys for the day-to-day operation of lessor's business.

The testimony of the lessor-bankrupt's president indicates his understanding that the lessor's sole obligation under the lease agreement was to make a monthly payment to the lessee-appellant from whatever funds were available to the lessor when the payment was due. As indicated above, the lessor commingled moneys from the leased departments, which is permitted by the trust clause, and disbursed such moneys for day-to-day operation of lessor's business. The president's testimony also indicates his belief that the trust clause was like a lien because the trust label somehow protected the lessee "regardless of what happened" and that the funds "had to be paid ahead of anything in case of difficulties, out of assets." This is not necessarily inconsistent with a trust, but his understanding shows an attempt was made to establish some preferred position in case of "difficulties." It shows no day-to-day duty of a trustee with regard to the funds.

We are satisfied that the trust clause was merely a device by which the parties sought to protect the lessee against the lessor's insolvency, and that the parties did not intend to create a real or true continuing trust relationship. Restatement (Second), Trusts § 12 and Comments *b* and *g* (1959).

As appellant points out there is no "magic" in the creation of a trust in New Mexico, H. B. Cartwright & Bro. v. United States Bank & Trust Co., 23 N. M. 82, 167 P. 436 (1917), McDermott v. Sher, 59 N.M. 142, 280 P.2d 660 (1955); however, the basic elements must be present regardless of what the arrangement may be designated by the parties and how they do it. The elements simply are not present here. 4 Collier, Bankruptcy (14th Ed.) 1213; 1 Scott, Trusts (2d Ed.) § 24.

In Lord's, Inc., Chicago Cutter-Karcher, Inc. v. Maley, 356 F.2d 456 (7th Cir.), the Seventh Circuit held (with a dissent) that a debtor-creditor relationship was not converted to one of trust by the inclusion of a trust clause in a lease agreement similar to the lease in the case at bar. The Lord's case also arose from a reclamation petition in bankruptcy proceedings. The trust clause there considered is identical to the trust clause in the case at bar, and the operating procedures were also similar to those in the case at bar. The Seventh Circuit held that the lessee-lessor relationship and debtor-creditor relationship were the fundamental ones and were not altered by the insertion of a somewhat inconsistent declaration of a trust. The trust clause the court held was merely a device through which the lessee sought

to secure the lessor's obligation. The court said: "[I]t appears that in the case before us, a 'trust' clause has been inserted into a document which otherwise sets up a simple debtor-creditor relationship in an effort to assure the debtor's performance of its obligations and not to create a trust."

We reach the same conclusion and hold that the Referee in Bankruptcy properly concluded that the relationship was that of creditor and debtor and not that of beneficiary and trustee. Under this view we do not need to decide additional issues raised on appeal for they presuppose the existence of a trust relationship.

Affirmed.