In the Matter of the Application of the BOARD OF EDUCATION OF THE CITY OF ONEIDA, Petitioner, for an Order of Mandamus against WILLIS TUTTLE, as Trustee of School District No. 4 of the Town of Lincoln, Respondent.

Supreme Court, Madison County, March 31, 1925.

Schools — mandamus to compel common school district to pay board of education of city of Oneida tuition for pupils attending academic grades in Oneida High School — Oneida High School was designated by district superintendent — district meeting refused to pay claim — State Commissioner of Education on appeal by clerk of board of education of Oneida ordered district to make payment — clerk of board had right to appeal under Education Law, § 890 — not necessary under Education Law, §§ 890 and 891, that petition on appeal should state facts showing jurisdiction — determination of Commissioner of Education not unconstitutional as impairing common school fund — Education Law, §§ 890 and 891, not unconstitutional as conferring judicial powers on Commissioner of Education — compelling payment under authority of Education Law, § 493, subd. 6, not taking property without due process of law — immaterial whether provision in Oneida city charter relating to education has been repealed.

The clerk of the board of education of the city of Oneida had the right, under section 890 of the Education Law, to appeal to the State Commissioner of Education from the determination of a common school district which refused to pay a claim by the board of education of the city of Oneida against the common school district for tuition for pupils attending the Oneida High School from said school district, which attendance was made under direction by the district superintendent of whose district the common school district was a part, that pupils from said common school district should attend the Oneida High School for academic work.

The clerk, who was also superintendent of schools of the city of Oneida, had the right to appeal without specific authority on the part of the board of education of the city of Oneida. But if such authority were necessary, it appears that the board of education ratified the action of its clerk in taking the appeal.

It was not necessary in order to confer jurisdiction on the Commissioner of Education, under section 890 of the Education Law, for the clerk to show in his petition on appeal, facts sufficient to establish jurisdiction. Furthermore, it appears from the moving papers on this application for mandamus to compel the common school district to pay the claim, that sufficient facts were shown to support the decision of the Commissioner of Education, even though they were not specifically set forth in the papers on appeal.

The decision by the Commissioner of Education that the common school district should pay the claim for tuition, and his direction that if sufficient funds were not available for that purpose that the trustees should raise funds by a tax upon property of the district, is not unconstitutional on the ground that it constitutes impairment of the common school funds and an application thereof for a purpose other than the support of common schools; the determination by the Commissioner of Education was not a diversion of funds in existence or maintained for common school purposes, but a direction to levy a tax if necessary pursuant to law authorizing it to be levied.

Sections 890 and 891 of the Education Law are not unconstitutional on the ground that judicial powers are conferred upon the Commissioner of Education.

Subdivision 6 of section 493 of the Education Law, pursuant to which the claim by the board of education of the city of Oneida for tuition was made, does not authorize the taking of property without due process of law contrary to constitutional inhibition, for education is of State wide and public concern and money devoted thereto is applied to public use as fully as expenditures for the construction and improvement of sewers, streets and highways, and, therefore, the Legislature had authority to compel the payment of this tuition by the school district, and the statute conferring that authority is constitutional.

It is immaterial whether or not the provision in the charter of the city of Oneida relating to education has been repealed, for section 300 of the Education Law makes the board of education of each union free school district or city a body corporate, and whether or not the school district of the city of Oneida exists by virtue of the charter or by virtue of the Education Law, such district is a corporate entity, and, therefore, it is not necessary to determine whether or not the provisions of the charter relative to education have been repealed.

The petitioner is entitled to a peremptory order of mandamus compelling the common school district to pay the claim for the tuition of the pupils who attended the Oneida High School.

MOTION for a peremptory mandamus order.

*Thomas Burke,* for the petitioner.

*Frank B. Gilbert* [*Irwin Esmond* of counsel], intervening by permission of the court and by consent of all parties, for Frank P. Graves, Commissioner of Education.

*Robert J. Fish* and *Charles A. Hitchcock,* for the respondent.

RHODES, J.:

This is an application for a peremptory order of mandamus against Willis Tuttle, as trustee of school district No. 4 of the town of Lincoln, commanding and requiring him to immediately pay a claim of the board of education of the city of Oneida, or in case there are no moneys available for this purpose, to raise by tax upon the taxable property of the district such sum as shall be necessary to pay said claim, with interest.

It appears that six pupils of academic grade, residents in said school district No. 4 of the town of Lincoln, which school district had not provided any academic instruction in its schools, attended

high school in the city of Oneida during the school year 1922 and 1923. The city school district of the city of Oneida is one of the recognized school districts of the State under the control and management of the board of education of such city, and has maintained as part of its educational system an academic department of full high school grade. The said Oneida High School has been duly designated by the district superintendent of schools of the fourth supervisory district of Madison county, the district having supervision of said school district No. 4 in the town of Lincoln, as the academic school for attendance of pupils from said school district No. 4. After such attendance a claim was presented in behalf of the board of education of the city of Oneida to the then trustee of said school district No. 4 for the sum of $125, on account of the instruction of said pupils. A meeting of the electors of said school district No. 4 was called for the purpose of taking action upon said claim and at such meeting it was voted that the claim should not be paid, and thereupon Frank Seeber, the trustee then in office, refused to pay and an appeal was taken to the Commissioner of Education by Harry W. Langworthy, clerk of the board of education of the city of Oneida and superintendent of schools of said city. Notice of said appeal was served upon said trustee of said school district No. 4, who did not answer or appear, and on the 22d day of September, 1923, a decision and order were made by the Commissioner of Education finding and determining that the said sum of $125 was due from said school district No. 4 to said board of education of the city of Oneida, and ordering the said trustee of said school district No. 4 to pay the same; otherwise, if no moneys were available therefor, to raise the amount thereof by tax upon the taxable property of said district. A copy of said decision and order was served upon the trustee of said school district No. 4 and such decision and order were filed with the clerk of the district. Because of the failure of the trustee to pay, he was removed from office by the Commissioner of Education, and an order was made by said Commissioner withholding public moneys from said district because of such failure and refusal. Subsequent trustees of school district No. 4 have refused to pay. Many other facts appear from the moving papers and the return presented on this application which are not fully set forth at this time.

Many objections are interposed in behalf of respondent to the granting of an order of peremptory mandamus, most of which objections attack the sufficiency of the proceedings on appeal to the Commissioner of Education which resulted in the order of the Commissioner directing the trustee of said school district No. 4

to pay said claim.  It is objected that the appeal was taken by Harry W. Langworthy, as clerk of the board of education and as superintendent of schools, and that his act is not the act of the board of education.  It may be true that in certain cases the act of the clerk of the board and superintendent of schools would not be the act of the board of education unless such act were directed, authorized and ratified by such board, or unless it were done and performed in the name and behalf of the board.  In this case, however, the act of its clerk has been adopted and ratified by the board, for this proceeding is instituted herein in the name and in behalf of such board, which constitutes a sufficient ratification and adoption of said acts of the clerk and superintendent.

It is insisted also in behalf of the petitioner herein that under the statute the said clerk and superintendent had the right to appeal in his own behalf under the provisions of section 890 of the Education Law (as renumbered from § 880, Laws of 1918, chap. 252), which permits any person conceiving himself aggrieved to appeal or petition to the Commissioner of Education.  The clerk of the board and superintendent certainly acted in the performance of his duties in the administration of the affairs of the board in taking said appeal, and it seems manifest that he is a person aggrieved having the right to appeal to the Commissioner, and he having thus appealed, and his act having been ratified and adopted by the board, such act cannot be questioned by the respondent.  It may be that the board of education might take advantage of and question his lack of authority to appeal in behalf of the board, but it appears clearly to have been the intention and understanding of the board and of said clerk and superintendent that he was throughout acting for and in its behalf.  This objection of the respondent should not, therefore, prevail.

Respondent also insists that the appeal taken to the Commissioner of Education did not set forth sufficient facts to confer jurisdiction upon the Commissioner to entertain said appeal or to make the decision and order thereupon which was made.  This contention is based upon the rule that the jurisdiction of a court of general jurisdiction is always presumed, while that of a court or officer of special or limited jurisdiction must be shown.  It is claimed that in order to confer authority upon the Commissioner of Education upon said appeal, it was necessary to recite in the moving papers upon appeal all the facts necessary to confer jurisdiction.  I do not think this contention is tenable.  Section 890 of the Education Law, formerly section 880 thereof, provides that " any person conceiving himself aggrieved may appeal or petition to the commissioner of education,  *  *  *  and the

commissioner of education may also institute such proceedings as are authorized under this act and his decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever." The statute conferring the right of appeal does not designate specifically the method by which the appeal is to be taken. Section 891 of the act, formerly section 881, provides that " the commissioner, in reference to such appeals, petitions or proceedings, shall have power: 1. To regulate the practice therein. * * * 4. To make all orders, by directing the levying of taxes or otherwise, which may, in his judgment, be proper or necessary to give effect to his decisions." It is true that the rights conferred upon the Commissioner are regulated by statute and that his decision must be in accordance with and is limited by law, and that such decision must be based upon sufficient facts to support the same, but I do not think these facts are required to be set out in the petition or other application by which the matter is brought to his attention on appeal. Without enumerating all the facts which the respondent claims were lacking in the appeal papers, it may be stated that from the moving papers herein it has been shown that all the facts existed sufficient to support the decision of the Commissioner of Education even though they may not have been specifically set forth in the papers by which the appeal was brought to his attention.

The respondent insists further, that the decision of the Commissioner is unconstitutional in that it is an impairment of the common school funds and that it constitutes an application thereof for a purpose other than the support of common schools. The decision of the Commissioner directs that the claim be paid by the trustee of school district No. 4 and " in case there are no moneys at present *available* for this purpose, to immediately raise by tax * * * such sum as shall be necessary to pay said claim with interest." This is not a diversion of a fund in existence or maintained for common school purposes, but is a levy of a tax pursuant to law authorizing it to be levied.

Furthermore, it is claimed by the respondent that the provision of the Education Law above referred to conferring judicial powers upon the Commissioner of Education is unconstitutional. This question has been passed upon by the Court of Appeals in the case of *Bullock* v. *Cooley* (225 N. Y. 566), where it is held that the provision in question is constitutional.

The further objection upon constitutional grounds is raised by the respondent to the effect that the authority granted by subdivision 6 of section 493 of the Education Law (as amd. by Laws of 1921,

chap. 383), pursuant to which the claim of the board has been made and established herein, without any form of contract and without the consent of the district to be charged with the debt, constitutes a case of taking the property of the inhabitants of the district without due process of law, and is, therefore, unconstitutional.

The principle established by the courts in a long line of decisions in this State is against the contention of the respondent. In *People ex rel. Griffin* v. *Mayor of Brooklyn* (4 N. Y. 419) a statute was under review which authorized the municipal corporation to grade and improve streets and to assess the expense among the owners and occupants of lands benefited by the improvement, in proportion to the amount of such benefit. It was claimed that an attempted special assessment thereunder for such local improvement was unconstitutional, and that it involved a taking of property without due process of law and involved a taking of property for public use without just compensation. The court held that the statute was constitutional and that " private property may be taken for public use either by taxation or by the right of eminent domain," and the fact was pointed out that taxation exacts money from individuals as their share of a public burden, and the tax-payer receives or is supposed to receive just compensation in the benefits conferred by government, and in the proper application of the tax. A similar question was involved in the case of *Brewster* v. *City of Syracuse* (19 N. Y. 116). There the plaintiffs were assessed for the construction of a sewer. The contractors who constructed the sewer having been paid the full amount of the contract price, a special act of the Legislature was passed authorizing and empowering the common council of the city to assess and collect, in the same manner as the expenses of constructing the sewer were by law authorized to be assessed and collected, the sum of $600 to be paid to the contractors. It was claimed that the act of the Legislature was unconstitutional and without authority. The court said: " The nature of this power was fully examined in *The People* v. *The Mayor of Brooklyn* (4 Comst. 419),* and it was declared to be a part of the legitimate exercise of the State's power of taxation, to ascertain, subject to no judicial review, the public burdens to be borne and the persons or classes of persons who were to bear them. It would, therefore, have been within the clear authority of the Legislature, to have authorized the city government of Syracuse, without the consent of any person specially interested, to construct this sewer, and to assess, by way of tax, the expenses on such persons as ought, in the judgment of the Legislature, to bear that

* See *People ex rel. Griffin* v. *Mayor of Brooklyn* (4 N. Y. 419).— [REP.

burden; and it does not at all follow from the fact that the charter of Syracuse required, as a preliminary to the action of the common council, that the consent of a majority of the property owners to be benefited should first be obtained, that the contract entered into by the city with the constructors of the sewer is to be deemed a contract between the property owners and the constructors. The property owners were not in any sense parties to the contract. Their consent to the building of the sewer, though a necessary condition to the exercise of the power actually conferred by the Legislature on the city government, was not at all necessary to the complete authority of the Legislature over the whole subject. The taxation of the individuals interested in regard to this sewer stands on the same footing as all other taxation by authority of the Legislature."

It is clear that under the Constitution and statutes of the State and under its present policy, education is of State-wide and public concern and that money devoted thereto is applied to a public use as fully as expenditures for the construction and improvement of sewers, streets and highways. In the case of *Darlington* v. *Mayor of New York* (31 N. Y. 164, 186) the act of 1855 (Chap. 428) for compensating parties whose property might be destroyed in consequence of mobs or riots, was attacked as being unconstitutional. It was held by the court to be valid, and the court said: " This act of 1855 does not impose a tax of any kind either State or municipal. Its provisions may, and no doubt will lead to the necessity of local taxation; and the same thing may be said of every act of legislation under which an expenditure for general or local purposes may in any contingency be required." The court further said: " It is plain enough that the suits which it authorizes, will, if successful, result in requiring contributions from the tax-payers of the local communities, to make good the losses of persons who have suffered from the acts of rioters. In that way, it may be said that their property may be taken. In one sense it may be conceded that it is taken for a public use; for when the State undertakes to indemnify sufferers from riots, the executing of that duty is a public concern, and the expenditure is on public account. It is a public use in the same sense as the expenditure of money for the erection of court houses and jails, the construction of roads and bridges, and the support of the poor. It is taken for an object which the Legislature has determined to be of public importance, and for the interest of the State. Private property thus taken is not seized by the execution of the right of eminent domain."

In *Matter of McAneny* v. *Board of Estimate & Apportionment*

(232 N. Y. 377) the Legislature passed an act creating the Board of Transit Commissioners of the city of New York, and provided that upon receiving requisitions from said Transit Commissioners the board of estimate and apportionment should make the appropriation required thereby. The Transit Commissioners presented such requisitions to the board of estimate and apportionment which refused to honor them. Thereupon the Transit Commissioners brought a proceeding for an order requiring the board of estimate and apportionment to perform its duties. It was held that the act was constitutional and it was competent for the Legislature to compel the board of estimate and apportionment to provide the money required.

In *Town of Guilford* v. *Board of Supervisors of Chenango County* (13 N. Y. 143) the commissioners of highways of the town of Guilford, by direction of the voters of the town, had sued a turnpike road company. They were unsuccessful in the action and after long litigation were obliged to pay costs. The town then refused to reimburse them these costs. They sued the town, and, after prosecuting the action to the court of last resort, ascertained that they had no legal remedy. They then applied to the Legislature, and procured an act authorizing the question of payment or not by the town to be submitted to the voters at the succeeding town meeting. Another application was made to the Legislature which resulted in the passage of the act authorizing the county judge of Chenango county to appoint three commissioners, whose duty it should be to hear and determine the amount of costs and expenses incurred in the prosecution and defense of the suits mentioned. It authorized the commissioners to make an award, under their hands, or that of a majority of them, which was to be filed with the county clerk of Chenango county. It made it the duty of the board of supervisors of the county at their next annual meeting after the filing of said award, to apportion the same upon the taxable property of the town of Guilford, and provide for its collection in the same manner as other taxes are collected. It was held that the act was constitutional and that the Legislature had the power to provide for the raising of the money in the manner specified.

From the principle established in the foregoing cited cases, it is manifest that the Legislature had authority to compel the payment of this tuition by the school district and that the statute conferring such authority is constitutional.

The respondent further insists that the provisions of the charter of the city of Oneida, attempted to be repealed by section 3 of chapter 786 of the Laws of 1917, are in violation of section 16 of article 3 of the Constitution of this State for the reason that chapter

786 is a general law relating to schools only and contains no reference to the charter of the city of Oneida, and that it relates to more than one subject not expressed in the title. A determination of this question is unnecessary for the reason that section 300 of the Education Law makes the board of education of each union free school district or city a body corporate. Whether the school district of the city of Oneida exists by virtue of the charter of the city, or under the provisions of the Education Law, such district is a corporate entity, so far as this proceeding is concerned, and, therefore, it is unnecessary to determine here whether or not the provisions of the charter of the city of Oneida relative to education have been repealed.

The facts being undisputed, the petitioner is, therefore, entitled to a peremptory order of mandamus as demanded in the petition and notice of application herein, with costs.