In the Matter of CHARLES JETER et al., Respondents, v ELLEN-
VILLE CENTRAL SCHOOL DISTRICT et al., Respondents; NEW
YORK CITY BOARD OF EDUCATION et al., Appellants.

Third Department, December 30, 1975

*W. Bernard Richland (Alfred Weinstein, L. Kevin Sheridan and Joseph F. Bruno* of counsel), for New York City Board of Education and another, appellants.

*John D. Gorman* for Charles Jeter and others, respondents.

*Lonstein & Stapleton (Benjamin Lonstein* of counsel), for Ellenville Central School District, respondent.

*Kaye, Scholer, Fierman, Hays & Handler (Peter M. Fishbein* of counsel), for City School District of the City of New Rochelle, appellant.

*Gerald Harris (Jonathan Lovett* of counsel), for Westchester County Department of Social Services, respondent.

*Diana W. Rivet* for Rockland County Department of Social Services, respondent.

*Smith, Ranscht, Pollock, Manos & Connors (Peter Matino* of counsel), for City School District of City of White Plains, respondent.

*Kalter & Gottlieb (Michael R. Gottlieb* of counsel), for Tri-Valley Central School District, respondent.

*Eugene J. Fox, Corporation Counsel (Richard G. Fontana* of counsel), for City of Yonkers Board of Education, appellant.

*Joseph R. Zibelli* for City of Mount Vernon Board of Education, respondent.

*Peter B. Nickles* for City of Peekskill Board of Education, respondent.

*Jacob E. Gunther* for City of Middletown Board of Education, respondent.

*Sirota, Bernstein & Steyer (Murray Steyer* of counsel), for Yorktown Central School District No. 1, appellant.

*Nickerson, Kramer, Lowenstein, Nessen, Kamin & Soll* for Mamaroneck Union Free School District, respondent.

*Francis J. Sisca* for Port Chester-Rye Union Free School District, respondent.

*Madden, Plunket, Wetzel & Scott* for Union Free School District No. 1 and others, respondents.

HERLIHY, P. J. This action was commenced pursuant to CPLR article 78, on behalf of certain foster parents and foster children in Ellenville, New York, against the Ellenville Central School District (hereinafter Ellenville) which had refused to admit the children to public schools until their tuition was paid by either the school district where each child resided when he was removed to a foster home in Ellenville or the welfare agency responsible for his support and maintenance.

By order to show cause, Ellenville was directed to permit enrollment of the children pending disposition of further proceedings. Thereafter, Special Term ordered the service of an amended petition joining as party respondents the various school districts (hereinafter sending school districts) in which the named foster children had allegedly resided prior to their foster care placement in Ellenville (a receiving school district), as well as the social services agencies which had allegedly placed the children in Ellenville. The amended petition sought a directive compelling the payment to Ellenville of the tuition costs from these added respondents.

By the interposition of numerous cross claims, this at first localized controversy expanded into the broad single issue of

which governmental entities must pay for the cost of educating foster home children under subdivision 5 of section 3202 of the Education Law as amended by chapter 867 of the Laws of 1973 and chapter 919 of the Laws of 1974.

By order dated May 20, 1975, Special Term converted the article 78 proceeding into a declaratory judgment action and made the following rulings (Matter of Jeter v Ellenville Cent. School Dist., 81 Misc 2d 511): (1) subdivision 5 of section 3202 of the Education Law is constitutional; (2) no receiving school district can refuse admittance to a foster child because the tuition costs have not been paid; (3) social services agencies are responsible for all tuition costs if they had assumed responsibility for such costs prior to January 1, 1974; and (4) where there has been no such assumption, the school district in which such pupil resided at the time he became a public charge is ultimately liable for the tuition costs.

Section 374 of the Social Services Law empowers social services agencies to place children in foster homes within the State of New York. Pursuant to such power the agencies in various cases have found suitable homes outside of the school district in which infants resided at the time the agencies assumed control. Prior to the amendment of subdivision 5 of section 3202 of the Education Law (all statutory references hereinafter are to the Education Law unless otherwise specified) in 1973, the cost of education of a foster child was required to be borne by the receiving district wherein the foster home was located unless the Commissioner of Education in proceedings initiated by the receiving district should rule that such district could refuse to accept the child or should rule that tuition should be paid by the agency responsible for the support of the child. All parties agree that the precipitating reason for the enactment of the 1973 amendment was to relieve the receiving school districts of the severe economic burdens arising from the cost of educating foster home children. The new paragraph a of subdivision 5 of section 3202 reads in pertinent part as follows: "The cost of instruction of pupils placed in family homes at board by a social services district or a state department or agency shall be borne by the school district in which each such pupil resided at the time the social services district or state department or agency assumed responsibility for the support and maintenance of such pupil; provided, however, that such cost of instruction shall continue to be borne while such pupil remains under the

age of twenty-one years, by any social services district or state department or agency which assumed responsibility for tuition costs for any such pupil prior to January one, nineteen hundred seventy-four."

The parties hereto raise various issues which relate primarily to the impact the statute, as amended, might have upon their liabilities for the tuition costs as sending school districts, receiving school districts, or welfare agencies. So as to facilitate an orderly consideration of the appeal, the contentions of the parties will be considered seriatim as presented in their briefs.

I

Appellant City School District of the City of New Rochelle (hereinafter New Rochelle) contends that Special Term erred in construing the provisions in the above-quoted section. It argues that a proper interpretation would result in a declaration that as to any child who became a foster child prior to January 1, 1974, tuition costs are to be borne solely by the appropriate welfare agency responsible for the general support of the infant prior to that date.

In considering this contention of New Rochelle, it is immediately to be noted that it runs contrary to the express language of the amended statute. The Legislature referred to the assumption of responsibility by a welfare agency for *support* in the first portion of the amended section and expressly limited the reference in the proviso to those having "assumed responsibility for *tuition*". It is doubtful that the Legislature by use of the meaningful word "tuition" actually intended to have liability in the proviso depend upon general support.

Upon the face of the section there is no ambiguity as to the intent of the Legislature to impose tuition costs upon a State agency other than a school district for foster children only where such agency had somehow assumed such liability prior to January 1, 1974. Pursuant to former subdivision 5 of section 3202 an agency supporting such a child was only legally liable for tuition when the Commissioner of Education expressly directed such payment. There is, however, nothing in former subdivision 5 of section 3202 which would have prevented an agreement by such an agency with a school district whereby such agency would pay tuition and, accordingly, there might be more than one basis for a continuing agency liability after January 1, 1974. In any event, the

legislative intent to impose liability for tuition costs upon welfare agencies only when they had been directly subjected to such costs prior to January 1, 1974 is manifest in the language used in the amendment. (See *Meltzer v Koenigsberg,* 302 NY 523, 525.)

New Rochelle contends that in fact there had been no assumption of tuition costs by welfare agencies either by order of the commissioner or voluntarily prior to 1974. Presumably, if the Legislature adopted the proviso knowing that no agencies had previously assumed responsibility for tuition, the intent might have been that urged by New Rochelle. However, this is not established in the record. To assume that the Legislature did not knowingly use the word "tuition" would be speculation. The intent of the Legislature was to provide relief to receiving districts, and, therefore, there is no merit to the argument that the manifest intent is being ignored.

The interpretation of the proviso by Special Term as requiring agencies responsible for the support and maintenance of foster children to pay tuition only where such an obligation was undertaken or in effect prior to 1974 for children then on their rolls is not undermined by this attack upon appeal.

## II

The appellant Lakeland Central School District (hereinafter Lakeland) first contends that the section imposes liability for tuition upon the school district of residence *at the time* he first became a pupil and that, therefore, Special Term erred in imposing the liability upon the district of residence when a welfare agency first assumed responsibility for support regardless of the infant's status as a pupil.

There can be no doubt that Special Term has equated the word "pupil" with the word "child". As noted hereinabove, the manifest intent of the Legislature was to terminate or avoid the imposition of education costs upon receiving districts for prior nonresident foster children sent into the district. This is apparent from the face of the sections and also from the various legislative memoranda submitted upon this appeal. If the receiving district is to be relieved of such cost of education, it was necessary for the Legislature to fix such cost on some other governmental entity.

In regard to the New Rochelle argument, we have found that the Legislature did not intend to put the burden upon the

welfare agencies except in particularized circumstances. Accordingly, the contention of Lakeland in regard to the imposition of tuition costs relates to imposing costs either upon the district where the infant *first became a pupil* or upon the district where the infant became a welfare charge regardless of his pupil status. To construe the section as possibly imposing the cost upon the receiving district would be the exact opposite of the legislative intent and is unacceptable.

The inequity sought to be righted by the Legislature was the imposition of costs upon the receiving district. The construction of the word "pupil" to mean that costs are assessed on the district where the infant first became eligible for a free education could easily result in the receiving district's being responsible for costs of education as to infants who were sent prior to compulsory school age. Such a construction, although supported by the use of the word "pupil", would thwart the manifest legislative intent. The word "pupil", however, is not the only operative term in the section and it is readily seen that the words "at the time the social services district or state department or agency assumed responsibility for the support and maintenance" are those which fix liability. The section is susceptible of the construction that the word "pupil" is the equivalent of "child" in fixing a school district's liability and that construction is the only one which fits the intent of the Legislature. (See *Abood v Hospital Ambulance Serv.,* 30 NY2d 295, 298.)

Accordingly, the determination of Special Term is correct, that as to school districts the one in which the infant resided when he became a public charge will be liable.

Lakeland further contends that Special Term erred in granting summary judgment because its pleadings raise factual issues as to liability for certain students. It is apparent, however, that the present judgment does not fix the tuition liability of any of the parties and such issues are not a bar to declaratory judgment.

It is also contended by Lakeland that the action was improperly maintained as a class action. The action was commenced by an appropriate class all seeking a free education and all having precisely the same interests, and, therefore, this argument is without merit.

### III

The appellants Yonkers Board of Education (hereinafter

Yonkers) and New York City Board of Education and Department of Social Services (hereinafter New York City) challenge the constitutionality of paragraph a of subdivision 5 of section 3202. Both Westchester and New Rochelle oppose the Yonkers and New York City claims upon the ground that as political subdivisions of the State, they have no standing to challenge the validity of the statute.

As to standing, the courts have been loosening the prior rigid standards, and it generally appears today that subordinate governmental entities may challenge the enforceability of State statutes that directly affect the private property or tax funds of the local government. (See *Town of Black Brook v State of New York,* 49 AD2d 417; *City of Buffalo v State Bd. of Equalization & Assessment,* 26 AD2d 213.) The present case appears to involve subordinate governmental entities interposing arguments in a proprietary capacity to protect their own funds as opposed to an attempt to limit the incursion into their powers, said powers necessarily being subordinate to the power of the State. There is no inherent standing bar to the claims of unconstitutionality raised by New York City and Yonkers.

Yonkers contends that the subject section is an arbitrary allocation of the fiscal burdens of educating foster children which has no rational relationship to a legitimate State interest. The thrust of this argument is that Yonkers as a sending school district (i.e. the district of residence at the time the infant became a public charge) is unduly burdened because in many instances, the child and the natural family are no longer bona fide residents of such district at the time the infant becomes a pupil and is placed in a receiving district. Yonkers relies primarily on the case of *Vlandis v Kline* (412 US 441) where the Supreme Court found that a statute establishing an irrebuttable presumption of nonresidence for tuition purposes in regard to students whose legal addresses at the time of application for admission to the school were outside the State was unconstitutional. The *Vlandis* case is inapplicable because the imposition of tuition by this statute does not affect the *private* rights of the students (foster children) as to education, and there is no presumption of residence involved which would discriminate against out-of-State pupils. In any event, there is no presumption of residence involved in this case.

Yonkers also contends that the failure of the Legislature to

provide a mechanism whereby school districts which must ultimately bear the educational costs would have an opportunity to be heard on the issue of where an infant will be placed in foster care violates the fundamental concepts of procedural due process. It seems apparent that the entirety of this argument by Yonkers would relate to a claim that there has been a denial of equal protection within the meaning of the Federal Constitution. (See *San Antonio School Dist. v Rodriguez,* 411 US 1.)

In New York State, education through 12 grades or equivalent levels is committed to the responsibility of the State, and boards of education and school districts are merely agents of the State for securing the appropriate free education and the raising of funds to provide for that education. (See *Matter of Divisich v Marshall,* 281 NY 170; *Union Free School Dist. v Town of Rye,* 280 NY 469.) Education is a matter of State interest and concern *(Matter of Board of Educ. of Union Free School Dist. No. 1 of Towns of Bethlehem, Coeymans & New Scotland v Wilson,* 303 NY 107, 113), subject to the control of the Legislature *(Union Free School Dist. v Town of Rye, supra,* P 477). As such, a board of education has full control over its tax funds except as controlled by acts of the Legislature *(Matter of Divisich v Marshall, supra,* p 174; *Robertson v Zimmermann,* 268 NY 52, 63–64). Thus, while taxes raised for educational purposes may be the private property of the boards of education as against third persons, they are public funds collected for the State-wide interest in education and become public property for that purpose and subject to the will of the Legislature *(Board of Educ. of Princeton High School Dist. No. 500 v Board of Educ. of Wyanet Community High School Dist. No. 510,* 314 Ill 83). It was held, therefore, in *Matter of Board of Educ. of City of Oneida v Tuttle* (125 Misc 230, affd 217 App Div 704) that a statute compelling a school district which does not maintain adequate schools to pay another district for the tuition of pupils residing in such district does not constitute the taking of property without due process of law, since education is of State-wide and public concern, and the Legislature has power to direct the payment of funds devoted to such use (see generally ann. 72 ALR 499–502).

It does not appear that the exercise of power by the Legislature to shift the educational funds of one school district to another school district constitutes any taking of such funds for

a purpose not within the ultimate and sole control of the State. As noted by the Court of Appeals in *Matter of Taylor v Sise* (33 NY2d 357, 364) "[t]here is generally a very strong presumption that 'the Legislature has investigated and found the existence of a situation showing or indicating the need for or desirability of the legislation' *(Matter of Van Berkel v Power,* 16 NY2d 37, 40)." Here there is ample proof of the lengthy studies and investigations of school tuition in relation to foster children, not only by the Legislature but by the executive branch. There is, therefore, no perceivable due process infirmity in the subject section as to the shifting of funds.

While it is established that pursuant to the provisions of the new section, an unfairness may result insofar as a burden is imposed upon a sending district which had no residential ties with either the child or his parents at the time tuition costs are imposed, it cannot be said that the objective of the Legislature to remove the particular burden from the receiving school district is not legitimate. As a practical matter it is improbable that any school district wherein the parents of such a foster child might reside is receiving any tax moneys directly through the financial capability of the parents. In those instances where the parents of the infant are financially capable but the child has been removed from them for reasons other than impoverished circumstances, it may be that the apparent unfairness is also real. Assuming other methods might have been used in regard to the allocation of costs, it cannot be said that the Legislature's efforts to resolve the problem before it were irrational or otherwise outside the scope of its sole authority. (Cf. *San Antonio School Dist. v Rodriguez,* 411 US 1, *supra; Jefferson v Hackney,* 406 US 535.) The absence of any substantial merit to the arguments of Yonkers in regard to the constitutionality of the section is perhaps best summarized by the following quotation from the reply brief of New Rochelle:

"Even if an annual determination of the residence of the foster child's natural parents were feasible, it would not be a valid reason to overrule the Legislature. As the Supreme Court stated in *Jefferson v. Hackney,* 406 U.S. 535 (1972): 'So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket. The very complexity of the problems suggests that there will be more

than one constitutionally permissible method of solving them.' 406 U.S. at 546–547. This is especially true in the area of education which 'presents a myriad of "intractable economic, social and even philosophical questions." ' *San Antonio [Independent School Dist. v. Rodriguez], supra,* 411 U.S. at 42."

The City of New York makes the curious argument that insofar as the subject section will require it to pay not only the cost of board—support and maintenance—but also the cost of tuition if it sends children to foster homes outside the city limits, it, as a city, is penalized by the new additional costs of tuition. Furthermore, it is argued that the statute creates through such costs a deterrent to the placement of such child outside the city even though foster homes within the city would not be in the best interests of the infant. This contention flows from the fact that New York City must provide funds both for the cost of its educational departments and for its department of social services. The contention that because of these additional costs the city would be deterred from making such out-of-district placements is clearly real and might be an approach the city would attempt to take in lessening its fiscal costs. Since the State and city must protect the best interests of the child, it is incumbent upon the State to preclude arbitrariness in the care of the child. There is no reason to assume that the State will not diligently oversee the actions of the city in regard to foster children. It is abundantly certain that the city is in no position to argue on behalf of its infants that this section is a restriction upon their right to travel, and, in any event, control over these infants having been assumed by the State through its appropriate agencies, it is obvious that for so long as the children are "foster children" they will have no independent right to select and adopt their own residences of their own free will. In any event, the right to travel is not really involved in this proceeding. The contentions of New York City have no perceivable merit within the context of this proceeding.

## IV

Special Term has declared that it would be presumed that the school district in which the infant resided immediately before his transfer to the receiving district is the entity responsible for tuition payments to such receiving district. The presumption imposed is rebuttable in that the school district to which the fee attaches may thereafter prove which

governmental entity would be responsible for the costs pursuant to the statute. While such a presumption would provide more immediate relief to the receiving district by avoiding the delay arising out of hearings to determine as a matter of fact what governmental entity should be paying tuition to it, there is no particular justification in the statute for imposing such a presumption. The section as amended specifically provides that the appropriate tuition is to be determined pursuant to a formula to be established by the Commissioner of Education. In this regard, it reasonably appears that in relation to establishing such formulas the Commissioner of Education would also have implicitly the jurisdiction necessary to determine conflicting claims among governmental entities as to which should bear the tuition costs. There is, therefore, no necessity to facilitate the receipt of tuition by imposing a procedural presumption for such purposes. Accordingly, the judgment should be modified by eliminating so much thereof as creates a presumption in regard to liability for tuition. In all other respects the various contentions of the parties as considered hereinabove are not of such a nature as to warrant any disturbance of the judgment of Special Term on the merits of this proceeding.

The judgment should be modified, on the law and the facts, by striking therefrom the fifth decretal paragraph thereof which imposes immediate liability upon the school district in which a child resided at the time of his transfer to the school district seeking tuition, and, as so modified, affirmed, without costs.

SWEENEY, KOREMAN, MAIN and REYNOLDS, JJ., concur.

Judgment modified, on the law and the facts, by striking therefrom the fifth decretal paragraph thereof which imposes immediate liability upon the school district in which a child resided at the time of his transfer to the school district seeking tuition, and, as so modified, affirmed, without costs.