■ QUOGUE UNION FREE SCHOOL DISTRICT No. 3, Appellant, v COUNTY OF SUFFOLK, Respondent, et al., Defendants.—In an action to recover tuition payments, plaintiff appeals from an order of the Supreme Court, Suffolk County, entered November 15, 1978, which (1) vacated a prior order of· the same court, dated June 19, 1978, which granted summary judgment to the plaintiff, (2) granted summary judgment to the defendant County of Suffolk, and (3) dismissed the complaint as against the said defendant. Order reversed, on the law, without costs or disbursements, motion to vacate denied, summary judgment is granted to the plaintiff as against the defendant County of Suffolk, and the matter is remitted to Special Term for an assessment of damages. This appeal concerns tuition costs for four children placed by the County of Suffolk (the county) in foster homes located within the plaintiff's district. Each of the children was placed shortly after birth. In each case, the foster home is the child's actual and only residence. Plaintiff is a small school district having neither a high school nor a sufficient number of students for special education programs. To fulfill those needs, plaintiff sends its children on a tuition basis to the high school in Westhampton and to BOCES District No. 1. Although plaintiff never sought financial assistance for the instruction of foster children within its own district (see Education Law, § 3202, former subd 5), it did seek reimbursement for tuition costs incurred for foster children placed in the district but educated elsewhere. For several years, the county routinely provided reimbursement for such children including the four involved in the case at bar. However, in 1973 (L 1973, ch 867, § 1, as amd by L 1974, ch 919, § 8), section 3202 (subd 5, par a) of the Education Law was amended to provide in pertinent part that: "the cost of instruction of pupils placed in family homes at board by a social services district or a state department or agency shall

be borne by the school district in which each such pupil resided at the time the social services district or state department or agency assumed responsibility for the support and maintenance of such pupil; *provided, however, that such cost of instruction shall continue to be borne, while such pupil remains under the age of twenty-one years, by any social services district or state department or agency which assumed responsibility for tuition costs for any such pupil prior to January one, nineteen hundred seventy-four."* (Emphasis supplied.) On April 10, 1973 the county notified the plaintiff that it would no longer pay tuition for the four children involved herein, and thereafter it refused to honor any tuition voucher submitted for the children after January 1, 1974. Plaintiff contends that the county, having assumed responsibility for the children's tuition costs prior to January 1, 1974, must continue to bear those costs pursuant to the provisions of the amended statute. The county, on the other hand, maintains that it did not assume responsibility within the meaning of the statute because it was never obligated by law to make tuition payments. The county explains that previous payments had been made owing to a misinterpretation of certain prior decisions of the Commissioner of Education. Special Term found that because the county was never "directly subjected" to the tuition costs prior to January 1, 1974, it was not obligated to continue payments thereafter. Accordingly, summary judgment was directed for the county. We reverse. In unambiguous terms, subdivision 5 of section 3202 of the Education Law imposes upon a county a continuing obligation for tuition costs where, prior to January 1, 1974, it assumed responsibility therefor. The resolution of the issue of whether the county in fact assumed such a responsibility does not depend solely upon the existence of a legal obligation to pay or upon the county's correct interpretation of previous statutes or decisions of the commissioner. "Pursuant to former subdivision 5 of section 3202 an agency supporting a [foster] child was only legally liable for tuition when the Commissioner of Education expressly directed such payment. There is, however, nothing in former subdivision 5 of section 3202 which would have prevented an agreement by such an agency with a school district whereby such agency would pay tuition and, accordingly, there might be more than one basis for a continuing agency liability after January 1, 1974." *(Matter of Jeter v Ellenville Cent. School Dist.,* 50 AD2d 366, 370, affd 41 NY2d 283.) In the case at bar, it is undisputed that, for whatever reason, the county did assume responsibility for tuition costs for the four children prior to January 1, 1974. Its responsibility for those costs, therefore, continued beyond that date. Accordingly, summary judgment should be entered on behalf of the plaintiff as against the county, and the matter should be remitted to Special Term for a determination of the tuition costs actually incurred. Mollen, P. J., Hopkins, Lazer and O'Connor, JJ., concur.