**In re RICHMOND CHILDREN'S CENTER, INC., Debtor.**

**Bankruptcy No. 83 B 20300.**

United States District Court,
S.D. New York.

May 14, 1985.

Zane and Rudofsky, New York City, for Debtor; Edward S. Rudofsky and Morris Sutton, New York City, of counsel.

Anderson, Banks, Moore & Hollis, Mount Kisco, for Yonkers Public Schools; Maurice F. Curran, and Lawrence W. Thomas, Mount Kisco, N.Y., of counsel.

Finkel, Goldstein & Berzow, New York City, for Official Creditors' Committee; Kevin J. Nash, New York City, of counsel.

## DECISION ON MOTION FOR TURNOVER OF FUNDS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The City of Yonkers (the "City"), a creditor in this Chapter 11 case, seeks an order directing the debtor-in-possession, Richmond Children's Center, Inc. ("Richmond"), to turn over $141,499.65 to the City for the reason that these funds are subject to a constructive trust and therefore are beyond the pale of the debtor's estate as defined by 11 U.S.C. § 541. Richmond is an intermediate child care facility for the developmentally disabled. One child care service not rendered directly by Richmond is the education of its children which is provided by outside institutions specializing in this type of education. A state law, relied upon by the City in support of its trust claim, authorizes a child care facility, such as Richmond, to contract for educational services with the Board of Education of the school district in which the facility is located. The educational expenses incurred are reimbursed to the child care facility by the Education Department of New York State.

The dispute in this case concerns the sum of $141,499.65 which was paid by the New York State Education Department to Richmond on April 18, 1983, before the filing of the Chapter 11 petition, as reimbursement for costs of education provided by various Yonkers schools. The City contends that under the statutory reimbursement scheme, Richmond is merely a conduit through which the reimbursement funds are to be passed along to the City's schools. Thus, the argument runs, a turnover is warranted because Richmond never held more than bare legal title to the $141,499.65 as a fiduciary for the benefit of the City's schools.

## FINDINGS OF FACT

1. Richmond Children's Center, Inc., a Chapter 11 debtor-in-possession, is an intermediate care facility for developmentally disabled children located in Yonkers, New York. Richmond does not educate its children, but contracts with the City of Yonkers Board of Education, as authorized by statute, to educate the children.

2. Pursuant to the New York State Education Law, the State Education Department reimburses Richmond for the costs of procuring educational services. As invoices are submitted to Richmond by the service-providing schools, a program director at Richmond reviews the bills for accuracy and verifies that the bills correspond with actual attendance records of the children.

3. Richmond and the Yonkers Board of Education entered into a contract, dated July 1, 1982, requiring the school board to furnish appropriate educational programs for the developmentally disabled children for the 1982–83 school year. The rate charged for the services was to be established by the City's statement of cost for each child, which required the parties' approval before becoming part of the contract. The agreement further states that "[p]ayments are subject to [Richmond's] reimbursement by the New York State Department of Education pursuant to Chapter 721 of the 1979 Laws of New York (6)(d)(3)."

4. In April, 1983, the New York State Education Department delivered to Richmond a check for $141,499.65 made payable to the order of Richmond Children's Center. A letter from the State to Richmond, dated April 18, 1983, explained the basis for the payment and stated that "[t]his is a 'pass-through' payment to the Yonkers P.S."

5. Richmond deposited the reimbursement funds into the Richmond Children's Center general checking account at the Bank of New York on May 2, 1983. This account contained other funds the debtor received from various governmental agencies upon which Richmond relies for financial support.

6. Richmond did not turn over the $141,499.65 to the City's schools to pay the invoices covering the 1982–83 school year. Instead, these funds were used to meet payroll and other expenses incurred in caring for the children.

7. On June 10, 1983, Richmond filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174. In its schedule of unsecured debts, Richmond listed the City of Yonkers as a creditor holding a general unsecured claim of $170,010.

## DISCUSSION

### JURISDICTION

Although not raised as an issue by the parties, the court notes preliminarily that this action to impose a constructive trust is not a "related to" proceeding within the meaning of 28 U.S.C. § 157(c)(1) so as to require entry of an order by the district court. This result obtained under the former Emergency Rule adopted in this district following the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), *see Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir.1983), and continues in cases governed by the jurisdictional provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See Varon v. Salomon (In re Martin Fein &*

*Co., Inc.)*, 43 B.R. 623, 629 n. 5 (Bkrtcy.S. D.N.Y.1984). That a constructive trust action may be asserted in a state court where such trusts are commonly imposed does not necessarily make the proceeding a "related to" case under the provisions relating to bankruptcy jurisdiction. *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d at 1582; *see also* 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.") The instant action for a constructive trust is akin to those "matters concerning the administration of the estate" and "proceedings affecting ... the adjustment of the debtor-creditor ... relationship" which are set forth as examples of core proceedings in which bankruptcy judges may enter dispositive orders and judgments.

### CONSTRUCTIVE TRUST CLAIM

Section 541(a)(1) of the Bankruptcy Code defines the bankruptcy estate as "comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property in which the debtor holds "only legal title and not an equitable interest," 11 U.S.C. § 541(d), however, is beyond the scope of the estate. Thus, where the debtor's interest in property consists only of bare legal title to a constructive trust, lacking any equitable interest in the trust res, the estate acquires nothing more than bare legal title. *See, e.g., In re Wyatt*, 6 B.R. 947, 953 (Bkrtcy.E.D.N.Y. 1980). The relationship of the trustee and beneficiary of a constructive trust vis-a-vis the bankruptcy estate has been described succinctly by the Eighth Circuit Court of Appeals.

> [W]here, under state law, the debtor's fraud or other wrongful conduct gives rise to a constructive trust, so that the debtor holds only bare legal title to the property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold the property subject to the same restrictions. *E.g., In re Shep-*

*ard,* 29 B.R. 928, 931–32 (Bkrtcy.M.D. Fla.1983); 4 *Collier on Bankruptcy* ¶ 541.13 (15th ed. 1983).

*In re Flight Transportation Corporation Securities Litigation,* 730 F.2d 1128, 1136 (8th Cir.1984).

■ The concept of a "constructive trust" for purposes of administering a bankruptcy case is not defined in the Code. *Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962, 967 n. 4 (5th Cir.1983). The legislative history to section 541, however, reveals the following policy in regard to a constructive trust:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), *reprinted in,* 1978 U.S.Code Cong. & Ad.News 5787, 5868, 6324. This legislative reference does not implicate federal law in the determination of the existence of a constructive trust, but simply indicates that distribution of the bankruptcy estate may hinge on the application of state law trust principles. It is the claimant's burden to establish the existence of the trust relationship which will remove the trust res from the pool of assets available to be administered pursuant to the distribution scheme of the Bankruptcy Code. *Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d at 969.

Under the New York State Education Law, children who reside in a non-state operated intermediate care facility for the mentally retarded shall be admitted to the public schools, and the school district in which such facility is located is obliged to provide educational services to these children. Section 3202(5)(d)(2) of the Education Law authorizes intermediate care facilities to contract with the Board of Education of the local school district for the provision of such services. The state education department reimburses the facility for all educational costs incurred that are not federally reimbursable. The relevant subsections of the statute read as follows:

> (1) Children who reside in an intermediate care facility for the mentally retarded, other than a state operated school for the mentally retarded, as defined in regulations of the office of mental retardation and developmental disabilities, shall be admitted to the public schools. The trustees or board of education of the school district in which such facility is located shall receive such children in the school orschools of the district for instruction and for the provision of necessary related services for a compensation to be fixed by the trustees or board of education, unless such trustees or board of education shall establish to the satisfaction of the commissioner of education that there are valid and sufficient reasons for refusal to receive such children. Evaluation of the educational needs of such children and placement in appropriate educational programs shall be made in accordance with article eighty-nine of this chapter.
>
> (2) Such intermediate care facility is authorized to contract with the trustees or board of education of such school district for the provision of services, including transportation.
>
> (3) The education department shall reimburse such intermediate care facility for the full cost of all nonfederally reimbursable servicses which shall, notwithstanding any inconsistent provision of law, include transportation services, provided pursuant to a contract authorized by this paragraph.

N.Y.Education Law § 3202(5)(d)(1)–(3) (McKinney 1981). Ultimately, the school district in which the child originally resided must bear the cost of education, as expressed in subsection (d)(4).

The school district in which the child resided at the time of placement in such intermediate care facility shall reimburse the education department for its expenditure on behalf of such child in an amount equal to the school district's basic contribution, as such term is defined in subdivision eight of section forty-four hundred one of this article for any child first admitted to such intermediate care facility, on or after July first, nineteen hundred seventy-nine.

N.Y.Education Law § 3202(5)(d)(4) (McKinney 1981). The purpose of the latter provision is to relieve local school districts of the cost of educating handicapped children who happen to reside in such school districts due to the location of an intermediate care facility. *See Jeter v. Ellenville Central School District*, 50 A.D.2d 366, 371, 377 N.Y.S.2d 685, 691 (3rd Dep't 1975), *aff'd*, 41 N.Y.2d 283, 360 N.E.2d 1086, 392 N.Y.S.2d 403 (1977); *Harrison v. Allen (In re Board of Education)*, 29 A.D.2d 24, 26, 285 N.Y. S.2d 487, 489 (3rd Dep't 1967); *Board of Education v. City of New York*, 110 Misc.2d 898, 901, 443 N.Y.S.2d 133, 135 (Sup.Ct.1981).

The dispute in this case centers around section 3202(5)(d)(2) and (3) of the New York Education Law which authorizes Richmond, an intermediate care facility, to contract with the Yonkers school board for educational services, and to be reimbursed by the State for its contractual obligations. The City argues that these provisions, considered together with the statutory requirement that a school district furnish instruction to mentally retarded children residing in an intermediate care facility within the district, impress a constructive trust upon the state reimbursement funds for the benefit of the board of education. Accordingly, the City argues that these funds are outside the breadth of property of the estate as delineated in 11 U.S.C. § 541. The City further seizes upon the language in its contract with Richmond to the effect that payments to the board of education are subject to the state reimbursement payments and the cover letter describing the state funds as a "pass-through" payment

as demonstrative of the parties' intent to establish a trust relationship.

Under the provisions of the New York Education Law, it is patently clear that no express trust is imposed on state education reimbursement funds. This omission is significant in that the state legislature is well aware of the utility and desirability of express statutory trusts as manifested, for example, in the lien law of New York. N.Y.Lien Law §§ 70–71 (McKinney 1966) (funds received by owner, contractor or subcontractor under contract for improvement of real property to be held in separate trust to pay claims of those who contributed to improvement). The lien law for construction contracts insures that funds obtained for improvements to real property reach those contractors, subcontractors, architects, engineers, surveyors, laborers and materialmen who are responsible for the creation of the improvements and who the legislature has ordained to be accorded special protection. *See Teman Bros., Inc. v. New York Plumbers' Specialty Co.*, 109 Misc.2d 197, 199, 444 N.Y.S.2d 337, 340 (Sup.Ct.1981).

Section 3202(5)(d)(2) states that an "intermediate care facility is *authorized to contract* with the ... board of education of [a] school district...." This language merely grants such a care facility the authority to enter into a debtor-creditor relationship with a school board pursuant to an educational service contract. In short, the statute standing alone does not impose express trust obligations upon a care facility receiving reimbursement from the state.

 In the absence of an express trust, a constructive trust will still be imposed where the retention of property by a party results in his unjust enrichment. *See Cherno v. Dutch American Mercantile Corp.*, 353 F.2d 147, 153 (2d Cir.1965); *Gilbert v. Meyer*, 362 F.Supp. 168, 173 (S.D.N. Y.1973); *In re Anjopa Paper & Board Mfg. Co.*, 269 F.Supp. 241, 260 (S.D.N.Y. 1967); *Sharp v. Kosmalski*, 40 N.Y.2d 119, 123, 351 N.E.2d 721, 724, 386 N.Y.S.2d 72, 76 (1976); Restatement of Restitution

§ 160 (1937); *V* A. Scott on Trusts § 462.2, at 3417 (3d ed. 1967). In an insolvency proceeding, preferred treatment accorded a trust beneficiary must be justified as against other creditors holding general claims against the putative trustee. Thus, an application for a turnover based upon the ground of an impressed trust due to unjust enrichment of the estate "is not unlike any other reclamation proceeding, and can only be justified, of course, vis-a-vis the general creditors on the ground that there is an identified res to which [the applicant] has a superior equity." *Harvey Brokerage Co. v. Ambassador Hotel Corp.*, 57 F.2d 727, 731 (S.D.N.Y.1932).

The City's principal argument in favor of imposing a constructive trust is based on the sentence included in a letter from New York State to Richmond that "[t]his is a 'pass-through' payment to the Yonkers P.S." The description of the state reimbursement funds as a "pass-through" payment is neither mandated nor even suggested by section 3202(5)(d)(3) of the Education Law which simply provides that:

> The education department shall reimburse such intermediate care facility for the full cost of all nonfederally reimbursable services which shall, notwithstanding any inconsistent provision of law, include transportation services, provided pursuant to a contract authorized by this paragraph.

The intended meaning of the term "pass-through" is unclear and is at variance with the semantics of the statute which refer to the payments as reimbursement for "the full cost of all nonfederally reimbursable [educational] services." Moreover, the descriptive term "pass-through" is not contained in any contract, statute or regulation governing the relationships between the parties, but was merely contained in a letter directed to Richmond by Chilton M. Cammer, an official from the State Education Department. This communication may not be interpreted to impose unilaterally a trust upon the reimbursement funds.

■ Even if the term "pass-through payment" had been mutually agreed upon by the parties, trust obligations would not automatically arise. In this regard, a body of law has developed to the effect that the mere inclusion of trust language in a contract will, in some circumstances, have no legal effect. *See In re Morales Travel Agency*, 667 F.2d 1069, 1071–72 (1st Cir. 1981); *Carlson, Inc. v. Commercial Discount Corp.*, 382 F.2d 903, 905 (10th Cir. 1967); *Chicago Cutter-Karcher, Inc. v. Maley (In re Lord's Inc.)*, 356 F.2d 456, 458–59 (7th Cir.1966). One circumstance where words of trust are not controlling exists where there is no requirement that the funds be kept separate or are restricted in their use. *E.g., In re Morales Travel Agency*, 667 F.2d at 1071; *In re Penn Central Transportation Co.*, 328 F.Supp. 1278, 1279 (E.D.Pa.1971).

■ It is firmly established that an essential prerequisite to the imposition of a constructive trust is the presence of a segregated, identifiable trust res. *In re Morales Travel Agency*, 667 F.2d at 1071 (travel agency holding proceeds of ticket sales "in trust" for carrier not a trustee where the parties' agreement lacked a provision requiring agent to hold funds separately or restricting their use); *Chicago Cutter-Karcher, Inc. v. Maley (In re Lord's, Inc.)*, 356 F.2d at 458–59 (reclamation petition for trust funds denied where bankrupt, a lessee and merchant in department store, was permitted to commingle sale proceeds with its own funds and use funds without restriction until settlement date). This fundamental trust principle has also been articulated as follows:

> The crucial factor in distinguishing between a trust relationship and an ordinary debt is whether or not the recipient of the funds was entitled to use the funds as its own, and commingle the funds with its own monies.

*In re Penn Central Transportation Co.*, 328 F.Supp. 1278 (E.D.Pa.1971); *accord In re Black & Geddes, Inc.*, 35 B.R. 830, 836 (Bkrtcy.S.D.N.Y.1984); *M.E. Check Cashing Corp. v. Rubin (In re U.S.N. Co., Inc.)*, 32 B.R. 675, 678 (Bkrtcy.S.D.N.Y.1983); *Thunderbird Motor Lines, Inc. v. Penn*

*Dixie Steel Corp. (In re Penn Dixie Steel Corp.)*, 6 B.R. 817, 823–24 (Bkrtcy.S.D.N.Y. 1980), *aff'd*, 10 B.R. 878 (S.D.N.Y.1981). The undisputed evidence in this case establishes that Richmond deposited the state reimbursement check into its general checking account which contained other governmental reimbursement funds received by Richmond. The state reimbursement funds were subsequently used to meet Richmond's payroll and other child care expenses. Neither the Education Law nor the contract between Richmond and the City proscribed such conduct. It is readily apparent that there was no segregation of funds or restriction on the use of the money in question to satisfy the trust element of a separate, identifiable res.

▆ Absent a separate trust res, the mere breach of a contractual obligation concerning the payment of a debt does not constitute a basis for the imposition of a trust. *Cherno v. Dutch American Mercantile Corp.*, 353 F.2d at 154; G. Bogert, Trusts & Trustees § 479, at 180 (rev. 2d ed. 1978). As noted in *Thunderbird Motor Freight Lines, Inc. v. Penn Dixie Steel Corp. (In re Penn Dixie Steel Corp.)*, 6 B.R. at 825:

> To impress a constructive trust, there must be at least a wrongdoing greater than the nonpayment of a debt. The highest court of the land [*McKey v. Paradise*, 299 U.S. 119, 57 S.Ct. 124, 81 L.Ed. 75 (1936)] has so indicated.

Finally, the City emphasizes the statutory requirement imposed on the school system to educate Richmond's children as further support for the imposition of a constructive trust. Such a statutory duty, however, does not give rise to a trust relationship as expressed by the New York Supreme Court Appellate Division in *Fallica v. Town of Brookhaven*, 69 A.D.2d 579, 419 N.Y.S.2d 102 (2nd Dep't 1979), *modified*, 52 N.Y.2d 794, 417 N.E.2d 1248, 436 N.Y.S.2d 707 (1980). In *Fallica*, a local fire department sought to impress a constructive trust on rental payments made by a tenant in the district because the premises were tax exempt. The Appellate Division held that a fire district, obligated by law to furnish fire protection services to all residents in the district, could not impress a constructive trust upon the portion of rental payments attributable to the value of fire protection accorded the tenant where no authority existed to impress such a trust. 69 A.D.2d at 588–89, 419 N.Y.S.2d at 108–09. Likewise, in the instant case, the statutory obligation imposed on the City to educate all children residing in the school district is insufficient to impress a constructive trust for the City's benefit. The City has failed to sustain its burden to prove that the facts of this case warrant the imposition of a constructive trust under the precepts of New York State law. Having failed in this burden, the City must be treated as an unsecured creditor along with Richmond's other general creditors.

## CONCLUSIONS OF LAW

1. This action commenced by the City of Yonkers for the imposition of a constructive trust is akin to a matter concerning the administration of the estate or an adjustment of the debtor-creditor relationship, both examples of core proceedings which this court may hear and determine by the entry of a dispositive order pursuant to 28 U.S.C. § 157(b).

2. The relevant subsections to New York Education Law section 3202(5)(d) do not create an express statutory trust on reimbursement funds received by Richmond, an intermediate child care facility, from the State Education Department. Additionally, the contract for educational services between Richmond and the City of Yonkers, the letter from the Education Department describing the reimbursement as a "pass-through payment," and the statutory obligation on the City to educate Richmond's children do not form the basis for the imposition of a constructive trust for the City's benefit.

3. The City of Yonkers is a general unsecured creditor in this Chapter 11 case as properly indicated in the schedule of creditors accompanying the debtor's peti-

tion. Accordingly, the City's motion for a turnover and other related relief is denied.