**ENTERPRISE PRESS, INC., Plaintiff,**

v.

**FRESH FIELDS MARKETS, INC., Defendant.**

**No. 96 CIV. 8708(RLC).**

United States District Court, S.D. New York.

April 1, 1998.

Kolleeny, Kitay & Hort, New York, NY (Harvey Kitay, of Counsel), for Plaintiff.

Wallach, Turkish, and Wallach, New York, NY (William Turkish, of Counsel), Crouch & Hallet, L.L.P., Dallas, TX (Hubert A. Crouch, III, Jill B. Davenport, of Counsel), for Defendant.

### OPINION

ROBERT L. CARTER, District Judge.

This motion for summary judgment is brought by defendant Fresh Fields Markets, Inc. ("Fresh Fields") pursuant to Rule 56, F.R. Civ. P. Defendant contends that claims by the plaintiff, Enterprise Press, Inc. ("Enterprise Press"), for breach of contract, *quantum meruit*, should be dismissed on grounds that no genuine issue of material fact exists in support of them.

#### I

In 1993 defendant Fresh Fields, a chain of full-service natural foods supermarkets, began using a direct marketing agency, Market Imaging Systems, Inc. ("MIS"), to handle certain marketing functions. These functions included handling defendant's frequent shopper program and its direct mailing campaign; preparing and mailing defendant's newsletter; and performing data processing and analysis. (Def. Stmnt. of Facts at 2).

For each function that it was hired to carry out, MIS submitted a proposal and bill estimate to the defendant. Once defendant approved its proposal, MIS assumed responsibility for producing a finished product. *Id.*

In completing projects for the defendant, MIS performed certain productions in-house and hired subcontractors to perform other aspects of the production process. (Affdvt. of Joe Dobrow at 1; Affdvt. of Spence Hapoienu at 1). These outside vendors were selected independently by MIS without consultation with Fresh Fields. (Hapoienu Affdvt. at 2). Fresh Fields paid MIS directly for the total cost of each project that it had been hired to complete. *Id.* Any subcontractors hired by MIS to assist in the completion of marketing projects for Fresh Fields billed MIS for their work. *Id.*

The plaintiff, Enterprise Press, a printing and mailing service, was one of the many outside vendors used by MIS to assist in the completion of certain projects for defendant Fresh Fields in 1994. (Dobrow Affdvt. at 4). The instant action arises from MIS' failure to pay Enterprise Press for certain printing services rendered between April 30, 1994 and July 30, 1994, that were used by MIS to complete projects for Fresh Fields. (Complt. at 2–3).

Plaintiff unsuccessfully has attempted to collect payment for these services from MIS. On August 17, 1995, MIS and the plaintiff entered into a settlement agreement before Magistrate Judge Andrew Peck in which MIS agreed to pay $150,000 to the plaintiff to settle its account for the period in dispute. *Id.* at 2. MIS has not honored this agreement. *Id.* at 3.

Unable to collect from MIS, plaintiff now argues that Fresh Fields should be held responsible for the amount unpaid by MIS. According to the plaintiff, the defendant is liable for MIS' debts because MIS acted as the agent of the defendant when rendering the services described above. (Pl. Brf. in Opp. at 3–5.) Because the work it performed for MIS was done at defendant's behest and on defendant's behalf, the plaintiff insists that privity of contract exists between Enterprise Press and Fresh Fields. Specifically, plaintiff claims that privity exists because all the work that it performed for Fresh Fields allegedly was ordered, discussed, reviewed, and altered by defendant's employees or agents, and because all of the finished products made by plaintiff for defendant's use were shipped directly to the defendant. *Id.* at 1–3. Furthermore, plaintiff claims that privity of contract and an agency relationship exist because of the actions of Thomas Wilson, a member of the Board of Directors of both MIS and Fresh Fields. Wilson allegedly led plaintiff to believe that the defendant was aware that the plaintiff ultimately would look to Fresh Fields for payment of all amounts billed to MIS for work that the plaintiff performed to the benefit of the defendant. *Id.* at 3.

Fresh Fields maintains that it is not liable to Enterprise Press for the debts of MIS. The defendant was not a party to any contract between MIS and Enterprise Press and did not have an account with the plaintiff. (Dobrow Affvt. at 2). Neither did the defendant enter into any settlement agreement with plaintiff, nor authorize MIS to enter into any settlement on its behalf. *Id.* Furthermore, the defendant maintains that it paid MIS in full for all services rendered and printed matters received in 1994. During the period in dispute, the defendant paid MIS $275,516.32. *Id.* at 3–4.

## II

Rule 56(c), F.R. Civ. P. provides that summary judgment is appropriate where "... there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." If the moving party meets its burden to show the absence of a material factual dispute, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), F.R. Civ. P. While the court is to draw all reasonable inferences in support of the non-moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the court should not be reluctant to grant summary judgment in cases where an element essential to prove the non-moving party's case is factually unsupported in the record. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden upon the plaintiff, the non-moving party in this case, is to produce factual support sufficient to establish the existence of an agency relationship between the defendant and MIS. If MIS is best classified as an agent of Fresh Fields, rather than as an independent contractor, then there is a basis in law for holding the defendant liable for MIS' debts. As a general rule, a principal is liable for all obligations incurred by his agent within the course of his employment. 2 N.Y.Jur., Agency and Ind. Contractors, § 239. The principal is bound by and liable for actions taken by his agents, regardless of whether the agent acts with the actual or apparent authority of the principal, and whether the agency relationship is express or implied. *Id.* at §§ 22, 81, 239, 284. By contrast, employers of independent contractors generally are not held liable for the actions of their employees. Independent contractors are liable for their own acts. *Id.* at 342.

Although there is no set rule for determining whether a party is an agent of a principal or independent contractor, several well-recognized indicia distinguish the two employment statuses. Within the factual context presented in this case, the most important indicia of an agency relationship are control and consent. *See In re Shulman Transport Enter., Inc.,* 744 F.2d 293, 295 (2d Cir.1984); *E.B.A. Wholesale Corp., v. S.B. Mechanical Corp.,* 127 A.D.2d 737, 512 N.Y.S.2d 130, 131 (N.Y.App.Div.1987); Restatement (Second) of Agency §§ 12–14 (1958); 2 N.Y.Jur., Agency and Ind. Contractors, § 80–89.

If MIS, during the process of providing the marketing services to defendant described above, was under the defendant's "direction and control," meaning that the defendant controlled the methods and manner of the production process, then an agency relationship existed between the two. *In re Shulman,* 744 F.2d at 295. MIS would not be considered an agent of defendant if it was not under the control of Fresh Field's during the production process. That is, if MIS agreed to perform tasks and produce final products for the defendant, but maintained control over the methods and details of the production process, then MIS operated as an independent contractor of Fresh Fields. *See Columbia Broadcasting Sys., Inc. v. Stokely–Van Camp,* 522 F.2d 369, 375 (2d Cir.1975). Depending upon the circumstances presented in a given case, an independent contractor may or not be deemed an agent. *Id.*

Consent also is essential to establish an agency relationship: the principal must intend that the putative agent act on its behalf. The principal's consent is inferred by its course of conduct—statements, acts of commission or omission, or other manifestations of the principal's actual or apparent authorization of the agency relationship. 3 Am.Jur., Agency, §§ 79–80. A third party relying on an agent's putative authority—for example, the plaintiff in this case—must exercise "reasonable diligence and prudence" to ascertain whether the agent in fact is acting within the scope of the principal's apparent authority. *Id.* at § 83; *Karavos Compania Naviera S.A. v. Atlantica Export Corp.,* 588 F.2d 1, 10 (1978).

When considered in light of the Second Circuit's well-settled law on agency, the facts of the instant case are insufficient to support plaintiff's proposition that MIS functioned as the defendant's agent in completing the marketing projects described above. The record fails to demonstrate the requisite control or consent needed to sustain such a determination.

The sworn affidavits of Joe Dobrow, Spence Hapoienu, and Sandy Yagyu, management personnel at Fresh Fields who have personal knowledge of the facts in dispute in this case, aver that MIS completed marketing functions for Fresh Fields independently. An important example of MIS' independence from Fresh Fields is found in the fact that MIS hired subcontractors (such as Enterprise Press) of its choosing to aid in the completion of assignments for the defendant.

Moreover, plaintiff has not presented credible evidence to support its claim that Fresh Field's employees interfered in the production process of Enterprise Press during the course of its completion of projects for the defendant. The plaintiff is only able to reach

the conclusion that the defendant interfered in its work process by mischaracterizing the nature of its work. While important, the role played by a printing and mailing service such as Enterprise Press in the overall process of creating a newsletter for a national retail chain such as Fresh Fields is narrowly circumscribed. It is intuitively obvious that the functions performed by a printing and mailing outfit do not lend themselves to the level of interference that plaintiff implies occurred vis-a-vis itself, MIS, and Fresh Fields. Defendant's so-called "interference" in the plaintiff's work process was in the nature of proofreading and minor editing of drafts of Fresh Fields newsletters printed by the plaintiff. Such oversight is to be expected in the normal course of a printer's business dealings. On the other hand, if defendant had interfered in MIS' creative process—the actual design of the newsletter—such intervention would be probative of Fresh Field's "direction and control" of the methods and manner of the production process. However, the plaintiff has not alleged any interference by the defendant in the creative process.

Another critically important indicator of MIS' independence from Fresh Fields is found in the normal course of conduct regarding payment of subcontractors. The common practice for outside vendors employed by MIS to assist in the completion of projects for Fresh Fields was to bill MIS for their work. Like all other vendors, Enterprise Press sent invoices to and expected to be paid by MIS.

The element of consent is also absent from the factual scenario presented here. The defendant expressly denies authorizing MIS to act as its agent. Moreover, no credible circumstantial evidence supports the proposition that Fresh Fields impliedly intended MIS to act as its agent.

Plaintiff's ostensible reliance on representations regarding the parties' intent made by Thomas Wilson, reputedly a member of the boards of directors of MIS and Fresh Fields, are unavailing for at least two reasons. First, even assuming *arguendo* that Wilson made a representation of the variety alleged, there is no indication that he played any *formal* role whatsoever in plaintiff's hiring or in the production process. For instance, no evidence was offered that Wilson was the critical managerial or supervisory linkage between MIS and Fresh Fields, the person who was charged with interfering in MIS' creative process on behalf of the defendant. Had Wilson operated in this capacity, his actions would have been probative of the level of direction and control requisite to the existence of an agency relationship. However, no such evidence was offered by the plaintiff. In fact, Wilson was not in the position authoritatively to make binding commitments for these entities. *See Karavos,* 588 F.2d at 10. The corporate officers of MIS and Fresh Fields are distinct: Neither Hickey, the CEO of MIS, nor Bill Dennis, the President of MIS, is an officer of Fresh Fields. Plaintiff has offered no evidence that these crucial parties represented that it could rely upon Fresh Fields to cover the debts of MIS.

Second, the plaintiff offers no specific, credible evidence to support its claim that Wilson did, in fact, lead them to believe that Enterprise Press ultimately could look to the defendant for payment of MIS' debts. Ample opportunity existed for the plaintiff to call Wilson on his putative promise: the record contains invoices showing that MIS was 120 days past due on its account on several different occasions. Why not contact Fresh Fields directly for payment if all along plaintiff had been relying on and in good faith believed it was entitled ultimately to look to Fresh Fields for payment? Plaintiff's inattention to these issues undercuts its argument that it relied in good faith upon MIS authority as an agent of Fresh Fields. It is obvious that the plaintiff did not begin to conceive of MIS as defendant's agent, rather than as an independent contractor, until it was clear that MIS would not pay the past due balance that is the object of this dispute.

In addition to the absence of evidence of control or consent to an agency relationship, plaintiff's case is defeated by rebuttal evidence presented by Fresh Fields. The affidavit of Joe Dobrow, marketing director of Fresh Fields, summarizes the invoices submitted by MIS to defendant between April 18, 1994 and August 1, 1994, totaling $275,516.32, and swears that Fresh Fields paid

MIS that same amount. Having paid its debt to MIS, the defendant is not responsible for paying same twice because of MIS' dereliction of its financial obligation to the plaintiff.

While it is unfortunate that the plaintiff apparently has been bilked out of wages due for services rendered to MIS, some of which aid in completion of projects for the defendant, the facts of this case are insufficient to support the allegations contained in the complaint. Enterprise Press' claim against Fresh Fields for breach of contract in *quantum meruit* cannot stand as a matter of law.

The foregoing conclusion presupposes that summary judgment is appropriate in this case. Accordingly, the defendant's motion is granted pursuant to Rule 56(c), F.R. Civ.P.